# IN THE SUPREME COURT OF TEXAS

═══════════
No. 11-0549
═══════════

GEOFFREY DUGGER, PETITIONER,

v.

MARY ANN ARREDONDO, INDIVIDUALLY AND AS REPRESENTATIVE OF THE
ESTATE OF JOEL MARTINEZ, DECEASED, RESPONDENTS

═══════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIFTH DISTRICT OF TEXAS
═══════════════════════════════════════════════════

**Argued November 6, 2012**

JUSTICE GREEN delivered the opinion of the Court, in which CHIEF JUSTICE JEFFERSON, JUSTICE JOHNSON, JUSTICE GUZMAN, JUSTICE LEHRMANN, and JUSTICE BOYD joined.

JUSTICE HECHT filed a dissenting opinion, in which JUSTICE WILLETT and JUSTICE DEVINE joined.

In this wrongful death suit, we consider the viability of the common law "unlawful acts doctrine" as an affirmative defense in light of Texas's proportionate responsibility scheme and the statutory affirmative defense provided in section 93.001 of the Texas Civil Practice and Remedies Code. Under the unlawful acts doctrine, a plaintiff cannot recover damages if it can be shown that, at the time of injury, the plaintiff was engaged in an illegal act that contributed to the injury. *See Gulf, C. & S. F. Ry. Co. v. Johnson*, 9 S.W. 602, 603 (Tex. 1888). The trial court rendered summary

judgment for the defendant on his affirmative defense based on the unlawful acts doctrine. The court of appeals reversed, holding that section 93.001 superseded the unlawful acts doctrine. 347 S.W.3d 757, 768–69 (Tex. App.—Dallas 2011, pet. granted). We affirm the judgment of the court of appeals, but on different grounds. We hold that the Legislature's adoption of the proportionate responsibility scheme in Chapter 33 of the Civil Practice and Remedies Code evidenced its clear intention that a plaintiff's illegal conduct not falling within a statutorily-recognized affirmative defense be apportioned rather than barring recovery completely. The common law unlawful acts doctrine cannot coexist with this scheme. Accordingly, we affirm the court of appeals' judgment that reversed the summary judgment and remanded the case to the trial court for further proceedings.

## I. Factual and Procedural Background

On February 2, 2007, Geoffrey Dugger went to his friend Joel Martinez's house. While getting ready to leave the house, Dugger saw Martinez put in his pocket "cheese"—a mixture of black-tar heroin and Tylenol PM. After purchasing tequila and a cigar, which they later filled with marijuana to make a "blunt," the two men returned to the house where Dugger lived with his parents. While in Dugger's bedroom and backyard, both men consumed several tequila drinks, snorted lines of cheese, and smoked marijuana. Later in the evening, Martinez fell asleep while watching television. About thirty minutes later, Dugger noticed that Martinez was making a choking sound and subsequently began vomiting. Dugger yelled for his parents, and they came down the hall to his bedroom. Instead of calling 911, Dugger called Martinez's mother, Mary Ann Arredondo, and told her that Martinez had been drinking and was throwing up. Arredondo told Dugger to let Martinez sleep it off. After another fifteen minutes had passed, Dugger's father called 911. The police arrived

2

about five minutes later, shortly after midnight. The paramedics arrived about ten minutes after the police. Dugger did not tell the police or paramedics that Martinez had ingested heroin, only that he drank tequila and smoked marijuana. The paramedics treated Martinez for alcohol poisoning, but their efforts proved unavailing. Martinez died less than two hours after the call to 911.

Arredondo sued Dugger under the wrongful death and survival statutes, alleging that Dugger was negligent both in failing to call 911 immediately and in failing to disclose Martinez's heroin use to the paramedics. *See* TEX. CIV. PRAC. & REM. CODE §§ 71.002(a)–(b), .021. In his answer, Dugger asserted an affirmative defense based on the common law unlawful acts doctrine, which bars a plaintiff from recovery if, at the time of injury, he was engaged in an unlawful act that was "inextricably intertwined with the claim and the alleged damages would not have occurred but for the illegal act." *Sharpe v. Turley*, 191 S.W.3d 362, 366 (Tex. App.—Dallas 2006, pet. denied); *accord Johnson*, 9 S.W. at 603; *Russell v. Ingersoll-Rand Co.*, 841 S.W.2d 343, 347 (Tex. 1992) (providing that any defenses that would be available against the decedent if he or she were alive may be asserted against his or her estate). Dugger then moved for summary judgment on his affirmative defense based on the unlawful acts doctrine, which the trial court granted.[1] The trial court denied

---

[1] Arredondo argues that Dugger owed Martinez a duty because he created a dangerous situation by allowing drugs to be consumed at his house and therefore had a duty to prevent injury to others. *See Buchanan v. Rose*, 159 S.W.2d 109, 110 (Tex. 1942) ("[I]f a party negligently creates a dangerous situation it then becomes his duty to do something about it to prevent injury to others if it reasonably appears or should appear to him that others in the exercise of their lawful rights may be injured thereby."). Arredondo also asserts that because Dugger chose to partially disclose the nature of Martinez's medical distress to the paramedics, he was "deemed to have assumed a duty to tell the whole truth." *Union Pac. Res. Grp., Inc. v. Rhône-Poulenc, Inc.*, 247 F.3d 574, 584 (5th Cir. 2001) (discussing the duty to disclose in the fraud context (citing RESTATEMENT (SECOND) OF TORTS § 552(2)(b) (1976))). Finally, Arredondo argues that Dugger owed Martinez a duty under section 38.15(a)(2) of the Texas Penal Code, which states that "[a] person commits an offense if the person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with: . . . (2) a person who is employed to provide emergency medical services including the transportation of ill or injured persons while the person is performing that duty." TEX. PENAL CODE § 38.15(a)(2). We need not address this issue because the

Arredondo's motion for rehearing and motion for new trial. Arredondo appealed, arguing that

section 93.001 of the Civil Practice and Remedies Code replaced the common law unlawful acts

doctrine, and that the statutory affirmative defense did not apply in this case.[2] The court of appeals

reversed, holding that section 93.001 supersedes the common law unlawful acts doctrine.[3] 347

S.W.3d at 769. We granted Dugger's petition. 55 Sup. Ct. J. 757 (Tex. June 8, 2012).

## II. Analysis of Unlawful Acts Doctrine Jurisprudence

The issue before us is whether the common law unlawful acts doctrine remains available as

an affirmative defense to completely bar a plaintiff's recovery in tort cases in light of Texas's

proportionate responsibility scheme and the Legislature's more recent enactment providing for an

affirmative defense based on a plaintiff's felonious conduct. Dugger argues that an affirmative

defense based on the unlawful acts doctrine is available in personal injury and wrongful death cases

even when the elements of section 93.001's statutory affirmative defense are not satisfied.

Arredondo argues that the unlawful acts doctrine conflicts not only with section 93.001, but also with

the proportionate responsibility scheme in Chapter 33 of the Civil Practice and Remedies Code,

---

trial court rendered judgment solely on Dugger's traditional motion for summary judgment based on the unlawful acts doctrine, and that is the only issue before us.

[2] In her response to Dugger's motion for summary judgment, Arredondo argued that Texas's proportionate responsibility scheme superseded the unlawful acts doctrine. Arredondo did not raise the argument directly when challenging the summary judgment on appeal, but does include it in her argument at this Court. *See* TEX. R. APP. P. 38.1(f) ("The brief must state concisely all issues or points presented for review. The statement of an issue or point will be treated as covering every subsidiary question that is fairly included.").

[3] Arredondo brings her claims under sections 71.002(b) and 71.006 of the Wrongful Death Act. TEX. CIV. PRAC. & REM. CODE §§ 71.002(b), .006. At the court of appeals, Arredondo argued that the Wrongful Death Act abrogated the common law unlawful acts doctrine, but she does not make that argument to this Court. Accordingly, that issue is not before us and we do not address it.

4

which replaced former common law defenses that provided a complete bar to recovery in tort cases. *See* TEX. CIV. PRAC. & REM. CODE §§ 33.001–.004. We agree with Arredondo that the Legislature's enactment of Chapter 33's proportionate responsibility scheme and section 93.001 are dispositive in this case.

"[S]tatutes can modify common law rules, but before we construe one to do so, we must look carefully to be sure that was what the Legislature intended." *Energy Serv. Co. of Bowie v. Superior Snubbing Servs., Inc.*, 236 S.W.3d 190, 194 (Tex. 2007). In construing statutes, our goal is to give effect to the intent expressed by the language in the statute. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008) (citing *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006)). We begin our analysis by reviewing the common law unlawful acts doctrine.

## A. The Unlawful Acts Doctrine

More than 120 years ago, this Court recognized the common law unlawful acts doctrine as barring a plaintiff from recovering damages if it could be shown that, at the time of injury, the plaintiff was engaged in an illegal act that contributed to the injury.[4] *See Johnson*, 9 S.W. at 603. The doctrine originated with the principle of *in pari delicto* or "unclean hands" in the contract context, but was extended to tort causes of action. *See Rico v. Flores*, 405 F. Supp. 2d 746, 759–61 (S.D. Tex. 2005) (describing the use of the unlawful acts and *in pari delicto* doctrines in Texas jurisprudence), *rev'd on other grounds*, 481 F.3d 234 (5th Cir. 2007). The doctrine is based on the public policy that wrongdoers should not be compensated for their immoral acts. *See, e.g.*, *Ward v.*

---

[4] The unlawful acts doctrine is also referred to as the "outlaw doctrine," the "*ex turpi* rule," the "wrongful-conduct rule," and the "serious misconduct doctrine." *See* Joseph H. King, Jr., *Outlaws and Outlier Doctrines: The Serious Misconduct Bar in Tort Law*, 43 WM. & MARY L. REV. 1011, 1019 & n.35 (2002).

*Emmett*, 37 S.W.3d 500, 502 (Tex. App.—San Antonio 2001, no pet.); *Saks v. Sawtelle, Goode, Davidson & Troilo*, 880 S.W.2d 466, 470–71 (Tex. App.—San Antonio 1994, writ denied).

As early as 1888, we recognized that "no action will lie to recover a claim for damages, if to establish it the plaintiff requires aid from an illegal transaction, or is under the necessity of showing or in any manner depending upon an illegal act to which he is a party." *Johnson*, 9 S.W. at 603 (holding that the unlawful acts doctrine did not apply because there was no allegation or proof showing that, at the time of the injury, the plaintiff did any illegal act contributing to his injury). Since then, "[c]ourts throughout Texas . . . have used this rule, along with public policy principles, to prevent a plaintiff from recovering damages that arose out of his or her own illegal conduct." *Ward*, 37 S.W.3d at 502 (internal citations omitted). Courts applying the unlawful acts doctrine have required that the plaintiff's illegal act be "inextricably intertwined" with the claim for the illegal act to bar recovery. *See, e.g.*, *id.* at 503. An illegal act is "inextricably intertwined with the claim" if a plaintiff cannot prove a claim without having to prove his or her own illegal act. *See, e.g.*, *Norman v. B.V. Christie & Co.*, 363 S.W.2d 175, 177–78 (Tex. Civ. App.—Houston 1962, writ ref'd n.r.e.) (quoting *Stone v. Robinson*, 234 S.W. 1094, 1095 (Tex. 1921)). In Texas tort cases, the doctrine has most recently arisen in medical and legal malpractice cases. *See, e.g.*, *Ward*, 37 S.W.3d at 501; *Saks*, 880 S.W.2d at 470.

Recently, scholars and courts have disagreed over the viability of the unlawful acts doctrine in modern jurisprudence. The Restatement (Second) of Torts and respected legal scholars reject the principle that tortious or criminal conduct can completely bar recovery. *See* RESTATEMENT (SECOND) OF TORTS § 889 (1979); W. PAGE KEETON ET AL., PROSSER AND KEETON ON TORTS 232

6

(5th ed. 1984); *see generally* Joseph H. King, Jr., *Outlaws and Outlier Doctrines: The Serious Misconduct Bar in Tort Law*, 43 WM. & MARY L. REV. 1011 (2002) (suggesting that the unlawful acts doctrine, or "serious misconduct bar," should be abandoned by American courts). Several courts and legislatures, on the other hand, have approved of the unlawful acts doctrine in statutes and case law. *See, e.g.*, ALASKA STAT. § 09.65.210 (2012) (setting out a detailed statutory affirmative defense based on the unlawful acts doctrine); *Barker v. Kallash*, 468 N.E.2d 39, 43–44 (N.Y. 1984) (holding that a teenager who was injured while constructing a "pipe bomb" could not recover from the young boy who supplied the gun powder); *see also* Vincent R. Johnson, *The Unlawful Conduct Defense in Legal Malpractice*, 77 UMKC L. REV. 43, 45 (2008) ("Today, in an important range of cases, statutes and court decisions, in many states, now provide that injuries arising from the plaintiff's serious unlawful conduct are not compensable under tort law.").

Since Texas's shift to the proportionate responsibility scheme, discussed below, most Texas courts have used a plaintiff's unlawful act to measure proportionate responsibility and reduce recovery, rather than completely bar the plaintiff from recovering damages. *See, e.g.*, *Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 790, 797–98 (Tex. 2006) (allowing a publicly intoxicated plaintiff to recover for injures sustained by a security guard); *Thomas v. Uzoka*, 290 S.W.3d 437, 445–46 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (permitting a decedent's wife to recover despite the decedent's failure to wear a seatbelt). We turn next to Chapter 33's proportionate responsibility scheme and consider whether the Legislature intended it to abrogate the common law unlawful acts doctrine as a complete bar to a plaintiff's recovery.

## B. Chapter 33—Proportionate Responsibility

Before the Legislature enacted the proportionate responsibility scheme, Texas followed the all-or-nothing system of contributory negligence. *Parker v. Highland Park, Inc.*, 565 S.W.2d 512, 518 (Tex. 1978). Under contributory negligence, if a plaintiff was even one percent at fault, he or she could not recover. *See id.* In 1973, the Legislature adopted article 2212a, the first comparative negligence statute, "evidenc[ing] a clear policy purpose to apportion negligence according to the fault of the actors." *Id.*; *see also* Act of April 9, 1973, 63d Leg., R.S., ch. 28, §§ 1–2, 4–5, art. 2212a, 1973 Tex. Gen. Laws 41, 41–43, *repealed by* Act of June 16, 1985, 69th Leg., R.S., ch. 959, § 1, sec. 33.001, 1985 Tex. Gen. Laws 3242, 3270–71. Later, article 2212a was replaced with the comparative responsibility framework in Chapter 33 of the Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE §§ 33.001–.004; *see also* Act of June 16, 1985, 69th Leg., R.S., ch. 959, § 1, secs. 33.001–.004, 1985 Tex. Gen. Laws 3242, 3270–71, *amended by* Act of June 16, 1987, 70th Leg., 1st C.S., ch. 2, §§ 2.03–.12, secs. 33.001–.004, 1987 Tex. Gen. Laws 37, 41–44; *JCW Elecs., Inc. v. Garza*, 257 S.W.3d 701, 703 (Tex. 2008) (setting out the evolution of the comparative fault rules in Texas). In 1995, the Legislature modified Chapter 33 by replacing comparative responsibility with proportionate responsibility. Act of May 18, 1995, 74th Leg., R.S., ch. 136, § 1, 1995 Tex. Gen. Laws 971, 971–75 (amended 2003) (current version at TEX. CIV. PRAC. & REM. CODE §§ 33.001–.004); *see JCW Elecs.*, 257 S.W.3d at 703. Section 33.003 currently provides:

> (a) The trier of fact, as to each cause of action asserted, shall determine the percentage of responsibility, stated in whole numbers, for the following persons with respect to each person's causing or contributing to cause in any way the harm for which recovery of damages is sought, whether by negligent act or omission, by any

defective or unreasonably dangerous product, by other conduct or activity that violates an applicable legal standard, or by any combination of these:

    (1) each claimant;

    (2) each defendant;

    (3) each settling person; and

    (4) each responsible third party who has been designated under Section 33.004.

TEX. CIV. PRAC. & REM. CODE § 33.003(a). The proportionate responsibility scheme applies to "any cause of action based on tort in which a defendant, settling person, or responsible third party is found responsible for a percentage of the harm for which relief is sought." *Id.* § 33.002.

### C. Unlawful Conduct in Wrongful Death Cases

The wrongful death statute provides that "[a] person is liable for damages arising from an injury that causes an individual's death if the injury was caused by the person's or his agent's or servant's wrongful act, neglect, carelessness, unskillfulness, or default." *Id.* § 71.002(b). Parents may bring a wrongful death action on behalf of their deceased children. *See id.* § 71.004.

It is clear from the statute and our precedent that Chapter 33 applies to wrongful death claims. *See, e.g.*, *Russell*, 841 S.W.2d at 347. By its terms, Chapter 33 expressly applies to "any cause of action based on tort." TEX. CIV. PRAC. & REM. CODE § 33.002. In addition, we have held that, under the wrongful death statute, a defendant may assert any defense against the claimant that he might have asserted against the decedent, if the decedent were alive. *Russell*, 841 S.W.2d at 347. This formerly included the defense of contributory negligence. *See id.* (citing *Vassallo v. Nederl-Amerik Stoomv Maats Holland*, 344 S.W.2d 421, 424 (Tex. 1961)). Further, we have

9

recognized federal case law that holds that Texas comparative negligence precluded recovery in a wrongful death case because the decedent's negligence was greater than the tortfeasor's. *See id.* at 347 n.7 (citing *Mayo v. Tri-Bell Indus., Inc.*, 787 F.2d 1007, 1009 (5th Cir. 1986)). Finally, courts throughout the state generally accept that proportionate responsibility applies to wrongful death cases. *See, e.g.*, *Pastor v. Champs Rest., Inc.*, 750 S.W.2d 335, 358 (Tex. App.—Houston [14th Dist.] 1988, no writ) (remanding the case to the trial court to compare the decedent's negligence and bar's negligence in wrongful death case); *Velasquez v. Levingston*, 598 S.W.2d 346, 349 (Tex. Civ. App.—Corpus Christi 1980, no writ) (holding that recovery was precluded by then operative Texas comparative negligence statute because the decedent's negligence was greater than the tortfeasor's).

Because Chapter 33's proportionate responsibility scheme applies to wrongful death cases, and therefore applies to Arredondo's case, we must determine whether the common law unlawful acts doctrine is available as an affirmative defense under the proportionate responsibility framework. We conclude that it is not. The plain language of section 33.003 clearly indicates that the common law unlawful acts doctrine is no longer a viable defense. Section 33.003 provides, in pertinent part:

> The trier of fact . . . shall determine the percentage of responsibility . . . with respect to *each person's* causing or contributing to cause in *any* way the harm for which recovery of damages is sought, whether by negligent act or omission, by any defective or unreasonably dangerous product, *by other conduct or activity that violates an applicable legal standard* . . . .

*See* Tex. Civ. Prac. & Rem. Code § 33.003(a) (emphasis added). The language of the statute indicates the Legislature's desire to compare responsibility for injuries rather than bar recovery, even if the claimant was partly at fault or violated some legal standard. *See Parker*, 565 S.W.2d at 518

10

(discussing article 2212a, which is now Chapter 33).  Therefore, we hold that Chapter 33 controls over the unlawful acts doctrine in the wrongful death context.

The dissent contends that the unlawful acts doctrine and Chapter 33 may coexist as separate legal concepts.  *See* ___ S.W.3d at ___.  Nothing in Chapter 33 or in our case law suggests that the unlawful acts doctrine acts as an exception to the proportionate responsibility scheme, however.  *See Parker*, 565 S.W.2d at 518  (holding that Chapter 33 replaces common law doctrines that lead to a "system of absolute victory or total defeat").  Proportionate responsibility abrogated former common law doctrines that barred a plaintiff's recovery because of the plaintiff's conduct—like assumption of the risk, imminent peril, and last clear chance—in favor of submission of a question on proportionate responsibility.  *See Del Lago Partners, Inc. v. Smith*, 307 S.W. 3d 762, 772 (Tex. 2010).  When the Legislature intends an exception to Chapter 33's broad scheme, it creates specific exceptions for matters that are outside the scope of proportionate responsibility.  *See F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 690–91 (Tex. 2007).  In the context of criminal actions, for example, the Legislature did just that, removing certain criminal acts performed in concert with another person from the proportionate responsibility scheme and instead imposing joint and several liability.  *See* Act of May 18, 1995, 74th Leg., R.S., ch. 136, § 1, sec. 33.002, 1995 Tex. Gen. Laws 971, 972, *repealed by* Act of June 11, 2003, 78th Leg., R.S., ch. 204, § 4.10, sec. 33.002, 2003 Tex. Gen. Laws 859, 859.  We find no such indication that the Legislature intended a plaintiff's unlawful conduct to be treated differently from the other common law defenses under the former contributory negligence scheme, or that the Legislature intended it to be an exception to proportionate responsibility.  We hold that the unlawful acts doctrine fits within the categories of

11

former common law defenses that are now exclusively controlled by Chapter 33's proportionate responsibility scheme.

Further, we have accepted the concept that those who voluntarily put themselves in dangerous situations are not necessarily barred from recovering from other negligent individuals. For example, we have held that an individual who voluntarily became intoxicated and was injured while driving his car may recover against the establishment that served him the alcohol. *See Smith v. Sewell*, 858 S.W.2d 350, 355 (Tex. 1993). While "[h]istorically, an individual who voluntarily became intoxicated was precluded from suing a tavern owner for his own injuries," *id.* at 352 (citing 1 JAMES H. MOSHER, LIQUOR LIABILITY LAW § 2.02[6][a](1990)), the Legislature in 1987 established a cause of action against providers of alcohol under certain circumstances by enacting Chapter 2 of the Alcoholic Beverage Code. *See* TEX. ALCO. BEV. CODE § 2.03; *see also* Act of June 11, 1987, 70th Leg., R.S., ch. 303, § 3, sec. 202, 1987 Tex. Gen. Laws 1673, 1674. Therefore, in *Smith v. Sewell*, we held that, under Chapter 2, an individual who was voluntarily intoxicated was not barred from recovery, and that Chapter 33 was applicable to a cause of action under Chapter 2 against an alcoholic beverage provider. *See* 858 S.W.2d at 355–56. We noted that "when it is the intoxicated individual who is injured due to his own intoxication, it is particularly appropriate that his conduct in contributing to his injury should be considered in assessing the amount of recovery, if any, to which he is entitled." *Id.* at 356. It follows that, like the rule prohibiting voluntarily intoxicated individuals from recovering from a tavern owner, the adoption of the proportionate responsibility framework abrogated use of the common law unlawful acts doctrine to bar recovery in the tort context.

12

Dugger cites several cases in which a plaintiff was precluded from recovering damages in the legal malpractice context due to the plaintiff's underlying criminal conduct. *See, e.g.*, *Sharpe v. Turley*, 191 S.W.3d 362, 365–69 (Tex. App—Dallas 2006, pet. denied); *Saks v. Sawtelle, Goode, Davdison & Trolio*, 880 S.W.2d 466, 467 (Tex. App—San Antonio 1994, writ denied); *Dover v. Baker, Brown, Sharman & Parker*, 859 S.W.2d 441, 450–51 (Tex. App.—Houston [1st Dist.] 1993, no writ). While the public policy underlying the unlawful acts doctrine may be similar to the policy behind those cases, the context makes those cases unique. In *Peeler v. Hughes & Luce*, 909 S.W.2d 494 (Tex. 1995), we held that a client's criminal conduct, as a matter of law, was the sole proximate or producing cause of the client's conviction, and that the client could not bring a legal malpractice claim unless she had been exonerated from the criminal conviction. *Id.* at 496–98. Because the client's conduct, and not the attorney's, is the sole cause of any injury resulting from conviction, the plaintiff cannot satisfy the causation element of a legal malpractice claim absent exoneration. *See id.* While some courts of appeals have extended that reasoning to civil defendants bringing legal malpractice actions, we have not directly addressed that issue. *See, e.g.*, *Sharpe*, 191 S.W.3d at 369 (precluding a plaintiff from recovering from an attorney after a finding that summary judgment evidence established that the plaintiff's conduct forming the basis of the underlying civil fraud claim was unlawful). As it is not before us, we do not do so now, and we limit the holding in this case to personal injury and wrongful death cases.

We next consider section 93.001 of the Civil Practice and Remedies Code and how it interacts with Chapter 33.

13

### III. Section 93.001 of the Civil Practice and Remedies Code

In 1987, the Legislature enacted section 93.001 of the Civil Practice and Remedies Code, providing an affirmative defense to civil actions brought by convicted criminals seeking to recover damages for injuries arising out of their felonious acts.[5]  *See* TEX. CIV. PRAC. & REM. CODE § 93.001; *see also* Act of June 19, 1987, 70th Leg., R.S., ch. 824, § 1, sec. 93.001, 1987 Tex. Gen. Laws 2856, 2856.  The statute provides:

> (a) It is an affirmative defense to a civil action for damages for personal injury or death that the plaintiff, at the time the cause of action arose, was:
>
>> (1) committing a felony, for which the plaintiff has been finally convicted, that was the sole cause of the damages sustained by the plaintiff; or
>>
>> (2) committing or attempting to commit suicide, and the plaintiff's conduct in committing or attempting to commit suicide was the sole cause of the damages sustained; provided, however, if the suicide or attempted suicide was caused in whole or in part by a failure of the party or any defendant to comply with an applicable legal standard, then which suicide or attempted suicide shall not be a defense.
>
> (b) This section does not apply in any action brought by an employee, or the surviving beneficiaries of an employee, under the Workers' Compensation Law of Texas, or in any action against an insurer based on a contract of insurance, a statute, or common law.
>
> (c) In an action to which this section applies, this section shall prevail over any other law.

---

[5] Section 86.002 of the Civil Practice and Remedies Code is a similar expression of the legislative policy that convicted criminals may not recover for injuries sustained while committing a crime.  *See* TEX. CIV. PRAC. & REM. CODE § 86.002.  Arredondo does not rely on section 86.002 to support her argument that the unlawful acts doctrine has been superseded.  Thus, we do not address it.

TEX. CIV. PRAC. & REM. CODE § 93.001. It is undisputed that section 93.001 may not be used as an affirmative defense in this case. Martinez was never finally convicted, nor is there any indication that Martinez committed suicide as required by subsection 93.001(a)(2). *See id.*

We must still consider the language of section 93.001, however, to determine whether it evinces legislative intent that the common law unlawful acts doctrine remain available as an affirmative defense when the statutory affirmative defense is not, as Dugger argues. Subsection 93.001(a) initially indicates broad applicability to personal injury and wrongful death cases, but then limits the availability of the affirmative defense to two circumstances. *See id.* § 93.001(a). First, subsection 93.001(a)(1) limits the affirmative defense to cases in which both (1) the plaintiff was finally convicted, and (2) the felony was the sole cause of the damages. *See id.* The phrase "for which the plaintiff has been finally convicted" is an expression of a narrow policy of the state that convicted wrongdoers who committed the most serious crimes should not be permitted to recover. *Id.* § 93.001(a)(1). The narrow focus of subsection 93.001(a)(1) might, in effect, preclude its utility, as the dissent notes, where the plaintiff dies before conviction. *See* ___S.W.3d at ___. Yet this anomaly is less evidence of absurdity than recognition of the Legislature's policy choice that only criminals actually convicted of the most serious crimes will be barred from recovery. Although there is some overlap with the policy underlying the common law unlawful acts doctrine, the statute embodies this policy in a limited and narrow way. Second, subsection 93.001(a)(2) limits the affirmative defense to instances in which the plaintiff was committing or attempting suicide. This is entirely beyond the scope of the unlawful acts doctrine, although the policy underlying the common law doctrine certainly lends support for the suicide affirmative defense. But, again,

15

although Dugger argues that the broad unlawful acts doctrine survived Chapter 33 and section 93.001, nothing in the statute suggests such legislative intent. *See generally* TEX. CIV. PRAC. & REM. CODE § 93.001. In fact, subsections 93.001(b) and (c) clearly contemplate that the affirmative defense is not available in all cases, and subsection 93.001(a) specifies the narrow circumstances in which a plaintiff's recovery is barred by the plaintiff's conduct.

Arredondo argues that the language in subsection 93.001(c), stating "this section shall prevail over any other law," expresses the Legislature's intention for this statute to supersede the unlawful acts doctrine. Dugger contends that the phrase "an action in which this section applies," limits the statutory affirmative defense to cases in which (1) there has been a final conviction, or (2) there has been a suicide or attempted suicide, but the common law unlawful acts doctrine is available in all other personal injury or wrongful death actions. In considering these competing interpretations, we presume the Legislature enacts a statute with knowledge of existing law. *Acker v. Tex. Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990) (citing *McBride v. Clayton*, 166 S.W.2d 125, 128 (Tex. 1942)). When section 93.001 was enacted in 1987, article 2212a's comparative negligence already existed. *Compare* Act of June 19, 1987, 70th Leg., R.S., ch. 824, § 1, sec. 93.001, 1987 Tex. Gen. Laws 2856, 2856 (enactment of § 93.001 in 1987), *with* Act of April 9, 1973, 63d Leg., R.S., ch. 28, §§ 1–2, 4–5, art. 2212a, 1973 Tex. Gen. Laws 41, 41–43 (repealed 1985) (art. 2212a in effect in 1987). Chapter 33, as amended in 1987—the same legislative session as the enactment of section 93.001—provided that "[i]n an action to recover damages for negligence resulting in personal injury, property damage, or death . . . a claimant may recover damages only if his percentage of responsibility is less than or equal to 50 percent." Act of June 16, 1987, 70th Leg., 1st C.S., ch. 2,

16

§ 2.04, sec. 33.001(a), 1987 Tex. Gen. Laws 37, 41 (amended 1993); *compare id.* (amendment of Chapter 33 in 1987 by 70th Legislature), *with* Act of June 19, 1987, 70th Leg., R.S., ch. 824, § 1, sec. 93.001, 1987 Tex. Gen. Laws 2856, 2856 (enactment of § 93.001 in 1987 by 70th Legislature). Although section 93.001 does not expressly state what "other law" it prevails over, the Legislature likely intended it to prevail over Chapter 33's proportionate responsibility scheme, which had already abrogated the common law unlawful acts doctrine defense. *See* TEX. CIV. PRAC. & REM. CODE § 93.001. The dissent suggests that section 93.001 is a mere reaffirmation by the Legislature of the continued vitality of the unlawful acts doctrine in the context in which a plaintiff was engaged in criminal conduct and subsequently convicted. ___ S.W.3d at ___. In light of Chapter 33's abrogation of common law defenses that provide a complete bar to plaintiff's recovery—including the unlawful acts doctrine—we interpret subsection 93.001(c) as an indication that the Legislature intended the statutory affirmative defense to resurrect only a small portion of the unlawful acts doctrine, providing a complete bar to recovery only in the certain limited circumstances articulated by subsections 93.001(a)(1) and (2). *See* TEX. CIV. PRAC. & REM. CODE § 93.001(c).

## IV. Public Policy

Dugger and the dissent argue that if we do not uphold the unlawful acts doctrine, it will be easier for criminals to bring suits and recover. *See* ___ S.W.3d at ___. On the other hand, Arredondo argues that recognizing the unlawful acts doctrine could lead to a slippery slope where it would be impossible for many people to access the judicial system and try their claims because they were engaged in an unlawful act while sustaining injuries. Additionally, the Texas Civil Rights Project, as amicus curiae, contends that a broad unlawful acts doctrine could allow people who

17

commit serious tortious conduct against others to have civil immunity merely because the claimant was not in compliance with every law at the time of the tortious conduct. *Cf. City of Lancaster v. Chambers*, 883 S.W.2d 650, 653–55 (Tex. 1994) (holding that an injured passenger in a fleeing vehicle could maintain a suit for unreasonable chase because officers owed a duty of reasonable care).

The Legislature has resolved this conflict, however, with the enactment of proportionate responsibility. A plaintiff's actions are taken into account in calculating recovery, but do not completely bar recovery unless his or her actions account for more than fifty percent of the responsibility or satisfy the elements of the statutory affirmative defense in section 93.001. TEX. CIV. PRAC. & REM. CODE. §§ 33.001, .003; *id.* § 93.001. Further, sections 93.001 and 86.002 of the Civil Practice and Remedies Code speak to the policy of the state that in only a very limited set of circumstances will a plaintiff be barred from recovery. *See Fairfield Ins. Co. v. Stephens Martin Paving*, *LP*, 246 S.W.3d 653, 665 (Tex. 2008) ("The Legislature determines public policy through the statutes it passes." (citing *Town of Flower Mound v. Stafford Estates Ltd. P'ship*, 135 S.W.3d 620, 628 (Tex. 2004))). To hold that the unlawful acts doctrine applies broadly in the tort context despite the plain language of Chapter 33 and the legislative policy expressed in section 93.001 would render section 93.001 meaningless. *See Hunter v. Fort Worth Capital Corp.*, 620 S.W.2d 547, 551 (Tex. 1981) ("To hold otherwise would violate the rule of statutory construction that the [L]egislature is never presumed to do a useless act."). Nor does this interpretation compel the conclusion that the Legislature intended to make it easier for criminals to bring suit. Following a broad trend, the Legislature has embraced proportionate responsibility. *See* RESTATEMENT (THIRD)

OF TORTS: APPORTIONMENT OF LIABILITY, § 1 cmt. a (2000) (highlighting the almost universal shift from contributory negligence to comparative responsibility). The limited nature of the statutory affirmative defense in section 93.001, requiring a conviction in order to bar suit, reflects that trend as well as the Legislature's prerogative to recognize an exception that applies only under very narrow circumstances.

## V. Conclusion

We hold that the common law unlawful acts doctrine is not available as an affirmative defense in personal injury and wrongful death cases. Like other common law assumption-of-the-risk defenses, it was abrogated by Chapter 33's proportionate responsibility scheme. Unless the requirements of the affirmative defense in section 93.001 are satisfied, a plaintiff's share of responsibility for his or her injuries should be compared against the defendant's. We therefore affirm the judgment of the court of appeals, which reversed the summary judgment and remanded the case to the trial court.

_____
Paul W. Green
Justice

OPINION DELIVERED: August 30, 2013