**Affirmed and Opinion Filed October 11, 2016**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-15-01254-CV**

## IN RE BRANDON GROVES MCREYNOLDS, AN ADULT

**On Appeal from the 196th Judicial District Court**
**Hunt County, Texas**
**Trial Court Cause No. 82,127**

## OPINION

Before Justices Bridges, Lang-Miers, and Whitehill
Opinion by Justice Whitehill

This appeal requires us to decide whether family code § 2.005(b)(8) authorizes Texas courts to render sex change orders that judicially change a person's gender identifier. The trial court held that it does not. We agree because that statute (i) does not provide a procedure for Texas trial courts to do so and (ii) has a definite and reasonable alternative meaning on its face. Accordingly, we affirm the trial court's order denying appellant's petition for a sex change order changing his[1] gender identifier.

### I. BACKGROUND

Appellant filed an "Original Petition for Change of Gender Identifier" alleging that he was "transgendered by surgical reconstruction" and asking the trial court "to grant a change of

---

[1] Appellant uses masculine pronouns to refer to himself.

Petitioner's gender identifier from female to male." He then asserted that Texas Family Code § 2.005(b)(8) authorized the court to award the requested relief. But he admitted that he was not seeking a marriage license, and he did not say what he intended to do with the sex change order if it were granted. His appellate brief, however, asserts that he would use a sex change order to support an application to amend his birth certificate.[2]

The trial court heard the petition nine days after appellant filed it. The hearing was not recorded. The court later rendered an order denying appellant's petition reciting that: "There is no binding authority which the Court can find which allows the Court to change gender identity markers."

Appellant timely appealed.

## II. ANALYSIS

### A. Issue Presented

Although appellant presents two appellate issues:

(1) "Does a Texas trial court have authority to change gender identity markers," and

(2) "Did the trial court err by denying Appellant's Original Petition to Change Gender Identifier," his brief asserts a single overarching issue: Did the trial court err by ruling that family code § 2.005(b)(8) did not authorize the court to render a sex change order changing his gender identifier?

Appellant supports his issue with essentially three arguments: (i) under applicable statutory interpretation rules, § 2.005(b)(8) gives Texas courts authority to render sex change

---

[2] Appellant's petition did not explain what specifically he wanted the trial court to change. He did not explain what a "gender identifier" is. He did not identify any specific record or legal status he wanted the trial court to order be changed or any recognized specific legal or equitable relief he wanted the trial court to provide. He did not sue an opposing party. Nor did he ask the trial court to recognize an order from a foreign jurisdiction. He did not invoke the declaratory judgment statute, nor did he identify any existing dispute or controversy with another person that might support a declaratory judgment action.

To the extent appellant wants his birth certificate changed, as his appellate brief indicates, there is an administrative procedure for doing so. *See* TEX. HEALTH & SAFETY CODE § 191.028. But appellant does not say that he has invoked that procedure and failed. Nor does he explain why such an effort would be futile or what authority we would have to do something about it if it would be.

orders, (ii) other Texas trial courts have rendered sex change orders, and (iii) opinions from other Texas appellate courts support his position.

For the reasons that follow, we disagree with appellant's arguments and conclude that § 2.005(b)(8) does not authorize Texas courts to render sex change orders.

**B.      Standard of Review**

The issue presented turns on statutory construction, so our standard of review is de novo. *See City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008).

**C.      Does family code § 2.005(b)(8) authorize Texas trial courts to render sex change orders?**

**1.      Statutory Construction Principles**

Consistent with our constitutional role, we attempt to ascertain and effect the legislature's intent when we construe a statute. *See City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003). Our starting point is the plain and ordinary meaning of the statute's words. *Id.* If a statute's meaning is unambiguous, we generally enforce it according to its plain meaning. *Id.* We take the text's plain meaning as the sole expression of legislative intent, "unless the Legislature has supplied a different meaning by definition, a different meaning is apparent from the context, or applying the plain meaning would lead to absurd results." *Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 46 (Tex. 2015).

We read the statute as a whole and interpret it so as to give effect to every part. *City of San Antonio*, 111 S.W.3d at 25.

We presume that the legislature knows the existing law when it enacts a statute. *Dugger v. Arredondo*, 408 S.W.3d 825, 835 (Tex. 2013).

**2.      Construction of Family Code § 2.005(b)(8)**

Section 2.005 is part of a broader statutory scheme governing the issuance of marriage licenses. *See generally* TEX. FAM. CODE §§ 2.001–.014 (constituting Subchapter A, "Application

–3–

for Marriage License," within Chapter 2, "The Marriage Relationship"). Section 2.005(a) directs the county clerks to require marriage license applicants to prove their identity and age. Section 2.005(b) contains 19 subsections listing the various documents that can be used for these purposes. Section 2.005(b)(8) provides that "a court order relating to the applicant's name change or sex change" is one of those documents.

Specifically, § 2.005 provides as follows:

(a)     The county clerk shall require proof of the identity and age of each applicant [for a marriage license].

(b)     The proof must be established by:

. . .

(8)     an original or certified copy of a court order relating to the applicant's name change or sex change . . . .

*Id*. § 2.005.

Appellant argues that § 2.005(b)(8)'s reference to a sex change order implies that such orders are remedies that *Texas* courts can render. For support, he relies on the premise that the legislature is never presumed to do a useless act and, thus, a Texas court must be able to render such an order. *See Sneed v. Webre*, 465 S.W.3d 169, 182 (Tex. 2015). He also cites the Code Construction Act for the principles that "the entire statute is intended to be effective" and "a result feasible of execution is intended." *See* TEX. GOV'T CODE § 311.021(2), (4).

We disagree with appellant's interpretation because (i) the legislature provided no procedures governing a request for a sex change order and (ii) the statute has a definite and reasonable meaning as written.

Specifically, reading § 2.005 as a whole and giving it its plain meaning, we conclude that § 2.005(a) directs the county clerks to require marriage license applicants to prove their age and identity, and § 2.005(b) is an exclusive list of documents that an applicant can use for these

purposes. It does not, however, purport to address a Texas trial court's authority to render sex change orders.

If the legislature intended to create a new justiciable right of action for a sex change order, it would say so. For example, the statute would define the elements to be proved by a petitioner, and it would spell out any special procedures it deemed necessary to govern such actions. Had the legislature intended to create that statutory right, it would not have left it to the judicial branch to define the right's substantive elements and procedures.

Furthermore, § 2.005's history and the larger context of the family code reinforce our conclusion. Section 2.005(b)(8) was adopted in 2009. *See* Act of May 27, 2009, 81st Leg., R.S., ch. 978, § 2, 2009 Tex. Gen. Laws 2571, 2571. At that time, the family code already authorized courts to render name change orders under the standards and procedures spelled out in Chapter 45, entitled "Change of Name." *See* Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex. Gen. Laws 113, 120–22. Various sections within Chapter 45 govern venue, pleadings, citation, the matters to be proved, and the order itself. *See, e.g.*, FAM. §§ 45.001–.004, 45.101–.103. In sum, Chapter 45 both defines the substance of the right to a name change and tells the judiciary how to adjudicate that right.

By contrast, there is no statutory scheme expressly authorizing sex change orders or establishing procedures for obtaining such an order. *See In re Estate of Araguz*, 443 S.W.3d 233, 245 (Tex. App.—Corpus Christi 2014, pet. denied) ("However, unlike a name change, which is governed by Chapter 45 of the Texas Family Code, there is no corresponding chapter of the family code governing a sex change."). We presume that, when the legislature adopted § 2.005(b)(8), it knew there was already a statutory procedure for judicial name change orders and no statutory procedure for judicial sex change orders. *See Dugger*, 408 S.W.3d at 835. The

legislature's decision not to establish a scheme for sex change orders comparable to Chapter 45 suggests a lack of legislative intent to grant Texas courts the authority to make such orders.

Contrary to appellant's suggestion, our interpretation of § 2.005(b)(8) does not render its reference to sex change orders useless, ineffective, or not feasible of execution. Specifically, holding that § 2.005(b)(8) does not authorize Texas courts to render sex change orders does not mean that such orders cannot exist elsewhere. Other states (or countries) may have procedures for sex change orders. *See, e.g.*, OR. REV. STAT. § 33.460(2) ("The court may order a legal change of sex and enter the judgment in the same manner as that provided for change of name of a person . . . ."); *In re Heilig*, 816 A.2d 68, 85–86 (Md. 2003) (holding that Maryland trial court had jurisdiction to rule on a petition for sex change). Thus, § 2.005(b) means that sex change orders from jurisdictions that provide for such orders are proper means for establishing a marriage license applicant's age or identity. By interpreting § 2.005(b)(8) to mean that foreign sex change orders are acceptable proof of identity and age for marriage license applicants, we both give it a meaning consistent with its plain language and avoid making its "sex change" language superfluous.

### 3. Sex Change Orders in Texas Trial Courts

Appellant next observes that some Texas trial courts have issued sex change orders, as evidenced by appellate court opinions mentioning that fact. *See, e.g.*, *In re N.I.V.S.*, No. 04-14-00108-CV, 2015 WL 1120913, at *1 (Tex. App.—San Antonio Mar. 11, 2015, no pet.) (mem. op.) ("On January 3, 2014, Villarreal obtained a court order changing his identity from female to male.") (footnote omitted); *Littleton v. Prange*, 9 S.W.3d 223, 231 (Tex. App.—San Antonio 1999, pet. denied) (noting that a trial court had granted a transsexual's petition to amend sex identification information on original birth certificate); *see also In re Sandoval*, No. 04-15-00244-CV, 2016 WL 353010, at *1 & n.4 (Tex. App.—San Antonio Jan. 27, 2016, orig.

proceeding [mand. pending]) (mem. op.) (mentioning same order that was mentioned in the *In re N.I.V.S.* opinion). Appellant argues that we should therefore hold that § 2.005(b)(8) authorizes trial courts to render sex change orders "to avoid forum shopping and inconsistent trial-level outcomes."

We disagree. Texas trial court decisions have no precedential effect. *See In re Expunction*, 465 S.W.3d 283, 288 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ("The doctrine of stare decisis requires us to treat as binding the precedents of *higher courts*, as well as our own precedents . . . .") (emphasis added). The fact that two Texas trial courts have issued sex change orders carries no weight when we decide whether *this* Texas trial court correctly decided that § 2.005(b)(8) does not authorize such orders.

### 4.  Appellate Decisions

Finally, we address the four appellate decisions appellant relies on. For the reasons discussed below, these opinions do not change our conclusion that § 2.005(b)(8) should not be interpreted as appellant suggests.

#### a.  *Littleton*

*Littleton* was a wrongful death case. 9 S.W.3d at 225. Plaintiff Christie Littleton had been born "a physically healthy male" but later underwent sex reassignment surgery. *Id*. at 224. Littleton then married a man in Kentucky, and Littleton's spouse died a few years later. *Id*. at 225. Littleton sued Dr. Prange for wrongful death, and Prange won summary judgment by arguing that Littleton was still legally a man, Littleton's marriage was therefore invalid, and Littleton thus was not a wrongful death beneficiary entitled to sue. *Id*. at 225. The court of appeals affirmed, holding that Littleton was legally a man despite the sex reassignment surgery Littleton had undergone and despite a court order Littleton obtained during the wrongful death litigation amending Littleton's birth certificate as to name and sex. *Id*. at 231.

*Littleton* does not support appellant's position.  Indeed, as previously noted, § 2.005(b)(8) was not adopted until 2009—ten years after *Littleton* was decided.  Although *Littleton* discusses the health and safety code provision authorizing proceedings to amend a birth certificate, appellant does not rely on that statute in this appeal—he relies solely on family code § 2.005(b)(8) as authority for Texas courts to issue sex change orders.  *Littleton* is simply not on point.

### b. *Sandoval* and *N.I.V.S.*

The *Sandoval* and *N.I.V.S.* cases involve the same parties and arise from the same facts.

Diana Villarreal was born female but always identified as male.  *In re N.I.V.S.*, 2015 WL 1120913, at *1.  Villarreal began a romantic relationship with Sandra Sandoval in 1994.  *Id*.  Sandoval adopted two infants in 2002, and she and Villarreal raised the children as a family until 2011 when Sandoval and Villarreal separated.  *Id*.  Villarreal then filed suit to adjudicate parentage and filed a voluntary statement of paternity.  *Id*.  While suit was pending, Villarreal obtained a court order "changing his identity from female to male."  *Id*. (footnote omitted).

Sandoval filed a plea to the jurisdiction challenging Villarreal's standing.  *Id*.  The trial court granted the plea, and Villarreal appealed.  *Id*. at *1–2.  The court of appeals affirmed.  As pertinent to this case, the court rejected Villarreal's arguments that he could establish standing under family code provisions giving standing to "a man whose paternity of the child is to be adjudicated" and to "a man alleging himself to be the father of a child."  *Id*. at *3–5.  Standing must exist when the plaintiff files suit, and because Villarreal did not obtain the sex change order until later, he was not then a "man" within the meaning of those standing provisions.  *Id*.  The court specifically said, "Because it is not necessary to the disposition of this appeal, we do not comment on the effect, if any, of such a[ sex change] order."  *Id*. at *4 n.4.  *N.I.V.S.* thus does not support appellant's position in the present case.

Five days after the *N.I.V.S.* opinion, Villarreal filed a new suit to adjudicate parentage. *Sandoval*, 2016 WL 353010, at *2. He asserted that he had standing as "a man alleging himself to be the father of the minor children." *Id.* Sandoval filed a plea to the jurisdiction challenging Villarreal's standing, and the trial court denied the plea. *Id.* Sandoval sought mandamus relief.

The court of appeals granted mandamus relief. The court first noted that the family code's standing provisions required Villarreal to be "a man whose paternity of the child is to be adjudicated." *Id.* at *3 (citing FAM. § 160.602(a)(3)). The court then concluded that a man alleging "paternity" must assert that he is the biological father of the children, which Villarreal did not contend. *Id.* at *4. Thus, he lacked standing. *Id.*

As to Villarreal's sex change order, the *Sandoval* court said:

> The Order Granting Change of Identity was not challenged in the proceeding in which it was obtained. While the clear language of the Family Code recognizes such an order as sufficient to provide proof of [Villarreal]'s identity and age for the purpose of obtaining a marriage license, we conclude that it is not sufficient to confer statutory standing to maintain a suit to adjudicate parentage under subsection 160.602(a)(3). The Order Granting Change of Identity is a recognized form of proof of [Villarreal]'s identity and age for the purpose of obtaining a marriage license. It may also be sufficient to acknowledge [Villarreal]'s legal status as a man.

*Id.* at *3. To the extent the *Sandoval* court said that a Texas court's sex change order can be used for § 2.005 purposes, that statement is dicta because no application for a marriage license was involved in the *Sandoval* case. To the extent the *Sandoval* court implied that § 2.005(b)(8) authorizes Texas trial courts to render sex change orders, that too would be dicta and we disagree based on the statutory analysis set forth above.

### c.  *Estate of Araguz*

The *Estate of Araguz* case also does not change our analysis. In that case, Nikki Purdue, who was biologically male, ceremonially married another man, Thomas Araguz, in Texas in 2008. 443 S.W.3d at 236. Purdue later underwent genital reassignment surgery. *Id.* Then

Araguz died. *Id*. at 237. Probate litigation arose in which Araguz's mother and ex-wife contested the validity of his marriage to Purdue. *Id*. The trial court granted summary judgment against Purdue, ruling that Araguz and Purdue's marriage was a void same-sex marriage. *Id*. at 241. The court of appeals reversed, holding that there was a genuine fact issue as to Purdue's sex. *Id*. at 248–49. For support, the court relied principally on a doctor's affidavit testimony that Purdue was female when the ceremonial marriage took place. *Id*. at 248–49.

There was no Texas sex change order involved in the *Estate of Araguz* case. The court used § 2.005(b)(8) to deal with a different problem: the San Antonio Court of Appeals' opinion in *Littleton v. Prange*. In *Littleton*, the court held that a marriage between a man and a person who had been born male but undergone sex reassignment surgery was a void same-sex marriage because both participants were legally male. 9 S.W.3d at 231. If the *Estate of Araguz* court had followed *Littleton*, it would have had to affirm the summary judgment against Purdue. Instead, the court concluded that § 2.005(b)(8) "legislatively overruled" *Littleton* and allows a person who has had a "sex change" to marry a person of the opposite sex. 443 S.W.3d at 244–45.

Given the foregoing, it is apparent that *Estate of Araguz* did not decide whether § 2.005(b)(8) authorizes Texas courts to render sex change orders. Nevertheless, appellant focuses on the court's statement that § 2.005(b)(8) "clearly contemplates a court of competent jurisdiction issuing an order recognizing and essentially certifying an individual's change of sex, much like a name change." *Id*. at 245. But appellant does not address the next two sentences in the opinion:

> However, unlike a name change, which is governed by Chapter 45 of the Texas Family Code, there is no corresponding chapter of the family code governing a sex change. [citations omitted] There are no rules or standards set forth in the statute, and the legislative history is silent with respect to this provision of the statute.

–10–

*Id.* As we have discussed, the existence of Chapter 45 and the absence of rules or standards for a sex change order weigh against interpreting § 2.005(b)(8) to authorize Texas courts to render sex change orders.

We further note that our holding does not conflict with *Estate of Araguz.* The *Estate of Araguz* opinion says only that § 2.005(b)(8) contemplates "a court of competent jurisdiction issuing" a sex change order; the court was not asked whether Texas courts have that jurisdiction, and it did not purport to decide that question. This appeal squarely presents the question, and we resolve it against appellant.

**4.     Conclusion**

Based on fundamental statutory interpretation principles, we conclude that § 2.005(b)(8) does not authorize Texas courts to render sex change orders. *See In re Rocher*, No. 14-15-00462-CV, 2016 WL 4131626, at *2 (Tex. App.—Houston [14th Dist.] Aug. 2, 2016, no pet.) (mem. op.) (concluding that § 2.005 did not authorize trial court to change petitioner's "gender designation"). The appellate decisions relied on by appellant do not persuade us otherwise.

We overrule appellant's issues.

### III.  DISPOSITION

For the foregoing reasons, we affirm the trial court's judgment.

/Bill Whitehill/
BILL WHITEHILL
JUSTICE

151254F.P05

–11–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN RE BRANDON GROVES
MCREYNOLDS, AN ADULT

No. 05-15-01254-CV

On Appeal from the 196th Judicial District
Court, Hunt County, Texas
Trial Court Cause No. 82,127.
Opinion delivered by Justice Whitehill.
Justices Bridges and Lang-Miers
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered October 11, 2016.