No. 21,322.

ALEXANDER RICHARDS, *Appellant*, v., THE FLEMING COAL COMPANY, *Appellee*.

SYLLABUS BY THE COURT.

1. COAL MINING—*Statute Regulating Use of Dynamite in Coal Mines Constitutional.* Chapter 175 of the Laws of 1909 is constitutional, although it gives to mine operators and miners the power to make rules and regulations for the use of dynamite in coal mines, if the rules and regulations are approved by the state mine inspector.

2. SAME—*Strip-pit Coal Mines.* The act applies to strip-pit coal mines.

3. SAME—*Shot-firer in a Strip-pit Coal Mine—Within Provisions of Statute.* A shot-firer in a strip-pit coal mine comes within the provisions of the act making it unlawful for any person engaged in coal mining to use dynamite in the preparation of any blast or shot in any coal mine within the state.

4. SAME. Such a shot-firer, using dynamite in the preparation of a blast in violation of the act, cannot recover damages for injury sustained by him in the explosion of dynamite with which he was working, if it is necessary for him to prove its illegal use as a part of his case.

5. SAME—*Rules Regulating Use of Dynamite.* The fact that rules, under the act, could not have prevented the injury, does not affect the plaintiff's right to recover.

6. SAME. The excerpts set out in the opinion, taken from the contract between the mine operators and the miners, do not constitute rules and regulations for the use of dynamite in coal mines.

Appeal from Cherokee district court; JAMES N. DUNBAR, judge. Opinion filed March 8, 1919. Affirmed.

*E. L. Burton,* of Parsons, *Charles Stephens,* and *Paul Mac-Caskill,* both of Columbus, for the appellant.

*A. H. Skidmore,* and *S. L. Walker,* both of Columbus, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff commenced this action to recover damages for personal injury caused by an explosion of dynamite while he was working as shot-firer, or coal shooter, in a strip-pit coal mine operated by the defendant. On the trial, at the close of the plaintiff's evidence, the court, on the motion of the defendant, dismissed the action with prejudice,

on the ground that the plaintiff, at the time he was injured, was violating chapter 175 of the Laws of 1909. (Gen. Stat. 1915, §§ 6326-6330.) The plaintiff appeals. He argues, first, that the act referred to is unconstitutional; second, that it does not apply to strip-pit coal mines; third, that it did not apply to the plaintiff because he was not engaged in coal mining; fourth, that to bar the plaintiff's right of recovery, the violation of the statute must have been the proximate cause of the injury; fifth, that no rule could have been agreed upon which would have prevented the injury; sixth, that the contract entered into between the mine operators and the miners satisfied the statute. Each of the matters argued will be noticed.

In the pit in which the plaintiff was working, the coal was mined therefrom as follows: The surface earth and rock was first removed, a hole was then drilled through the coal to or into the earth beneath, where a small charge of dynamite was placed and exploded. That explosion created a cavity into which black powder was then poured, and it was exploded. The latter explosion loosened the coal so that it could be taken away. A part of the plaintiff's work was to place and explode the charge of dynamite and the charge of powder. The dynamite was exploded by means of electricity. That was generally done by the use of a plunger electric battery and electric wires. The battery was placed about eighty feet from the charge, which was exploded by a current of electricity generated in the battery. It was so constructed that the charge could not be exploded accidentally. The battery got out of repair. The plaintiff was then directed to use two dry-cell batteries. He requested that he be furnished with a plunger battery. That was not done. While arranging the wires and carrying a small charge of dynamite to be exploded in a hole, the wires accidentally touched the dry-cell battery and caused the dynamite to explode in the plaintiff's hand. The petition alleged that the defendant was negligent in furnishing the plaintiff with the dry-cell batteries. It will be assumed that the defendant was negligent in furnishing those batteries.

1. The part of the act the constitutionality of which is attacked reads as follows:

"It shall be unlawful for any person or persons engaged in coal mining to use or cause to be used dynamite or other detonating explosives in the preparation of any blast or shot in any coal mine within the state

of Kansas: Provided, however, that dynamite or other detonating explosives may be used under such rules and regulations as may be agreed upon between the employer and the employees, same to be approved by the state mine inspector. . All rules, regulations and permits to use dynamite or other detonating explosives, as herein provided, shall be in writing." (Laws 1909, ch. 175, § 1, Gen. Stat. 1915, § 6326.)

Another section of the act, which should be read with the one quoted, is as follows:

"Any person or persons violating the provisions of section 1 of this act shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined in any sum not exceeding twenty-five dollars." (Laws 1909, ch. 175, § 3; Gen. Stat. 1915, § 6328.)

The plaintiff contends that the act is unconstitutional because it delegates to mine operators and miners the power to make rules and regulations for the use of dynamite in coal mines, which rules and regulations may be different in different localities. The plaintiff cites *Hutchinson v. Leimbach,* 68 Kan. 37, 74 Pac. 598. In that case a statute was held invalid because it conferred upon petitioners, who did not represent the state, the power to take territory out of an incorporated city.

Powers similar to the one given by the statute under consideration have been granted to agencies of the state by other statutes, and those statutes have been expressly or impliedly held valid. Among these are the statutes giving to the board of railroad commissioners, and subsequently to the public utilities commission, power to fix freight and passenger rates, to compel railroads to give sufficient service, etc. (*The State v. Railway Co.,* 76 Kan. 467, 92 Pac. 606; *The State, ex rel., v. Postal Telegraph Co.,* 96 Kan. 298, 150 Pac. 544; *Railroad Co. v. Utilities Commission,* 95 Kan. 604, 148 Pac. 667) ; the statute giving to the charter board the power to refuse a bank charter if, upon examination, the board shall determine that the bank is not necessary to the business of the community (*Schaake v. Dolley,* 85 Kan. 598, 118 Pac. 80) ; the statute giving to the entomological commission power to declare the existence of conditions under which that commission is authorized to suppress pernicious insect pests and injurious and contagious plant diseases (*Balch v. Glenn,* 85 Kan. 735, 119 Pac. 67) ; and the statute giving the board of health power to make rules and regulations carrying out the provisions of the pure drug and

food act (*The State v. Meyer,* 94 Kan 647, 146 Pac. 1007). However, in the last case it was expressly stated that the constitutionality of the act was not attacked. In most of the states, statutes giving similar powers have likewise been held constitutional. These cases will be found collated in 12 C. J. 847-853. The act now questioned, giving to mine operators and miners the power to make rules and regulations concerning the use of dynamite in coal mines, subject, however, to the approval of the state mine inspector, is not unconstitutional.

2. The plaintiff contends that if the statute is constitutional it applies to shaft mines only; not to strip-pit mines. This argument is based partly on section 2 of the act, which reads:

"It shall be unlawful for any person or persons, firm, corporation or company to direct any of its or their employees to go into any sinking shaft or development work in a coal mine, after shots have been discharged in which dynamite or other detonating explosives have been used, before having removed all smoke, gases or other unsanitary conditions that may have been so created by the use of dynamite or other detonating explosives." (Gen. Stat. 1915, § 6327.)

The argument is also based partly on chapters 174, 175, and 176 of the Laws of 1909. Chapter 174 relates to sprinkling or saturating coal dust or other inflammable material in coal mines and to removing such material therefrom. Chapter 175 is the statute now under consideration, and chapter 176 relates to escape-shafts in such mines. The fact that these acts are placed together in the session laws has no significance. They relate to coal mines, and must be construed together; and unless they duplicate or contradict each other, neither has any bearing on the interpretation of the other. No duplication or contradiction is apparent.

The act under consideration declares that it shall be unlawful to use dynamite in any coal mine in this state. Webster defines a mine as a pit or excavation in the earth from which ore, precious stone, coal, or other mineral substances are taken by digging. In volume 11 of Corpus Juris, page 935, it is said that "a coal mine is a mine or pit from which coal is obtained." The plaintiff was working in a pit to obtain coal. He was working in a coal mine within the meaning of the act.

3. The plaintiff contends that the law, even if it is valid and is applicable to strip-pit coal mines, does not apply to him,

for the reason that he was not engaged in coal mining. Then what was he doing? For what purpose was he exploding dynamite? For what purpose was he loosening the coal by exploding black powder under it? He did those things to assist in getting the coal. The earth was removed from the surface of the coal by steam shovels. The man who operated the engine that gave the power to the shovel was engaged in mining coal. The man who lifted the coal from its place on the ground to some means of conveyance for the purpose of carrying it away was mining coal. The man who took the coal away was mining coal. The overseer who directed the work of the employees was mining coal. It necessarily follows that the plaintiff also was mining coal. (Mine Foreman's Qualifications, 17 Pa. Co. Ct. R. 99.)

4. Another proposition urged is that, to bar the plaintiff's right to recover, the violation of the statute must have been the proximate cause of the injury. This is the most serious question presented in the plaintiff's briefs. Abundant authorities are cited to support this contention. The defendant meets it by arguing that a person will not be permitted to recover when it is necessary for him to prove his own illegal act as a part of his case. (*Kansas City v. Orr,* 62 Kan. 61, 67, 61 Pac. 397.) What was the proximate cause of the plaintiff's injury? What hurt him? The dry-cell batteries? No. The current of electricity? No. What then? The explosion of the dynamite caused by electricity acidentally generated by means of a defective appliance with which the plaintiff was working. When the plaintiff sought to prove his case, he introduced evidence to show his injury; how that injury was received; the explosion of the dynamite; the fact that he had the dynamite in his hand; that he was preparing to explode it under the coal; and all the other circumstances attending the accident. The plaintiff could not prove his case without showing that he was using dynamite in violation of law at the time that he was injured, and that his injury arose out of that violation. He cannot recover.

5. The plaintiff insists that no rules that could have been agreed upon under the law would have prevented his injury. True, if he had acted exactly as he did act. But those rules, if they had permitted the plaintiff to do what he did, would not

have prevented his recovery. If rules had been made, and if he had been obedient to them, and had been injured on account of the use of the dry-cell batteries, he probably could have recovered in this action.

6. The plaintiff says that the contract entered into by the agreement between the mine operators and the miners satisfies the statute. He quotes the following from that contract:

"The management of the mine, the direction of the working force, and the right to hire and discharge are vested exclusively in the operator.

"Any mine committeeman, who shall attempt to execute any local rule of proceeding in conflict with any provisions of this contract, or any other, made in pursuance thereof, shall be forthwith deposed as committeeman."

There is nothing in the language quoted concerning the use of dynamite. That language does not satisfy the statute, and there is nothing to show that the state mine inspector had approved the contract, even if it did make rules and regulations for the use of dynamite.

The judgment is affirmed.