No. 23,013.

THE STATE OF KANSAS, ex rel. THE COURT OF INDUSTRIAL RE-
LATIONS et al., *Appellee*, V. ALEXANDER HOWAT, AUGUST
DORCHY, THOMAS HARVEY, and ROBERT B. FOSTER, *Appel-
lants.*

SYLLABUS BY THE COURT.

1. COURT OF INDUSTRIAL RELATIONS—*Jurisdiction Conferred by Statute
Relative to Investigation and Operation of Mining Industries Not Ob-
noxious to the Constitution.* The legislature may create an adminis-
trative body and empower it to investigate conditions existing in the
mining industry, make findings and reports, and establish rules with
reference to the operation thereof designed, among other purposes, to
promote the health and safety of employees and the continuity of
production, so long as the regulations are reasonable and not upon
some special ground obnoxious to constitutional provisions.

2. SAME—*One Provision of the Statute Being Held Unconstitutional Does
Not Invalidate the Entire Act.* In view of the provision of the statute
creating the court of industrial relations, that if any part thereof
shall be held to be invalid it shall be conclusively presumed that the
legislature would have passed the act without it, any portions thereof
which are not objectionable in themselves must be enforced regard-
less of whether or not other portions may be open to constitutional
objections.

3. SAME—*Statute Authorizing Investigation of Mining Industries Valid
—Duty of Witness to Obey Subpœna—Contempt.* The provisions of
the statute creating the court of industrial relations authorizing that
body to conduct investigations of the character indicated in the
first paragraph of this syllabus are valid, and one who refuses
obedience to an order of the district court requiring him to appear as
a witness in such an investigation cannot be heard, in a proceeding
against him for contempt on account thereof, to question the validity
of other portions of the act because of constitutional guarantees which
are not invaded by the requirement made of him.

4. SAME—*Finding of Disobedience of Subpœna Warranted.* The finding
that the defendants disobeyed the order of the district court is held
to have been warranted.

5. SAME—*Provision Authorizing District Court to Compel Obedience to
Subpœna Not Unconstitutional.* The provision of the act creating the
court of industrial relations that in case of the refusal of any per-
son to obey a subpœna issued by that body it may take proper pro-
ceedings in any court of competent jurisdiction to compel obedience
thereto, authorizes the district court to make an order for the ap-
pearance of such person before the industrial court, and to commit

him for contempt in case of his refusal. The provision is not open to constitutional objection on the ground that such action of the district court would be nonjudicial.

6. SAME—*Disobedience of Subpœna on the Ground of Self-incrimination —Not Available to Defendants.* The disobedience of an order to appear as a witness in such an investigation as that referred to in the first paragraph hereof cannot be justified on the ground that questions might be asked the answers to which would tend to self-incrimination.

7. SAME—*Special Session of the Legislature—Call Within Discretion of the Governor.* Under the provision of the constitution authorizing the legislature to be convened by proclamation on extraordinary occasions, the governor is the final judge of the existence of conditions justifying the calling of a special session. (*Farrelly v. Cole,* 60 Kan. 356, 56 Pac. 492, followed.)

8. SAME—*No Defect in Title of Act Creating Court of Industrial Relations.* The act creating the court of industrial relations is held not to be void by reason of any defect in the title; nor because it makes applicable to that body the laws previously relating to the public utilities commission; nor on the ground that it commingles in one body executive, legislative, and judicial functions.

9. SAME—*Immaterial Objections to Statute.* Various objections to the act are held not to be material in this proceeding.

10. SAME—*No Conflict between Provisions of Statute Creating the Court and Congressional Legislation.* Legislation by congress concerning the unlawful restraint of interstate commerce and control of fuel by the government during the war, and the appointment by the president of a commission to hear and determine matters of hours, wages and conditions in the mining industry, do not so fully occupy the field covered by the act creating the court of industrial relations as to prevent that body from investigating conditions in the mining district of this state, making reports thereon, and exerting some degree of regulation with reference thereto.

Appeal from Crawford district court; ANDREW J. CURRAN, judge. Opinion filed July 19, 1920. Affirmed.

*Phil H. Callery,* of Pittsburg, *John F. Clarkson, Byron Coon,* both of Albia, Iowa, and *Redmond S. Brennan,* of Kansas City, Mo., for the appellants.

*Richard J. Hopkins,* attorney-general, *A. B. Keller,* county attorney, *F. Dumont Smith,* of Hutchinson, and *Fred S. Jackson,* attorney for the court of industrial relations, for the appellee.

The opinion of the court was delivered by

MASON, J.: On April 9, 1920, Alexander Howat and three others were adjudged guilty of contempt in failing to obey an order of the district court requiring them to appear as witnesses before the court of industrial relations, in an investigation to be conducted by it relating to the conditions existing in the mining industry in Cherokee and Crawford counties. They were committed to jail until they should submit to be sworn and testify in such proceeding. They appeal.

The investigation originated in complaints of miners who were members of a labor union of which the defendants were officers. It was directed (among other subjects) to working conditions in the coal mines with reference to hours of labor, provisions for safety and sanitary conditions; miners' incomes with relation to living costs; plans of mining as to continuity of production; conditions of the mines with reference to future supply, and the cost of production as compared with previous years; school and church privileges and general social surroundings; and complaints of mine workers, or owners, and of the public. In response to the charge of contempt made against them, the defendants on April 8, 1920, filed in the district court an answer consisting of twenty-three paragraphs. The first twenty-one alleged that the act undertaking to create the court of industrial relations was void because in conflict with various provisions of the state and federal constitutions, and that therefore that body had no legal existence and the district court was without jurisdiction to enforce attendance upon it. The twenty-second paragraph denied the violation of any lawful order of the district court, and the twenty-third was a general denial. On June 26 the defendants filed in this court a motion, which was granted, for leave to withdraw all grounds of defense based upon the alleged violation of any constitutional rights. On July 2 the defendants asked that the order of allowance be vacated and that they be permitted to withdraw the motion, in order that their contentions as to the invalidity of the industrial-court act might be considered. Permission was given to present whatever constitutional questions might affect the disposition of the case, the court suggesting to counsel that the actual question involved appeared to be of a

much narrower scope than might be indicated by some of the allegations of the answer. The defendants, on June 26, also asked a continuance of the cause from the date to which it had been assigned (July 6) on the ground that by reason of other engagements their attorneys had not had sufficient time for preparation, and that one of them could not be present on that date, which request was renewed when the case was called for hearing. The applications for a postponement were denied. The only question involved in the present proceeding is whether the defendants may be required to attend as witnesses before the court of industrial relations—a question which involves no difficult or complicated legal problems and to which an early answer should be given, since it involves no more than the right of a witness to refuse obedience to a subpœna. The defendants elected to submit the case on briefs without oral argument, being allowed until July 17 to prepare additional typewritten briefs if desired. On July 16 a brief was filed in their behalf, presenting a number of new propositions, introduced by the statement that the time for filing it had been limited to a brevity out of all proportion to the importance of the case. If the questions argued in the additional brief were required to be determined in this proceeding, ten days would indeed have been a very short time in which to prepare it, although it would appear to have been by the defendants' own choice that the preparation was delayed until the case had been reached for hearing. Inasmuch as we regard it as unnecessary to pass at this time upon the more difficult propositions advanced, the time allowed is considered by us to be ample under the circumstances.

1. Most of the constitutional objections raised by the defendants are directed to provisions of the act creating the court of industrial relations the validity or invalidity of which can in our judgment have no possible bearing upon the disposition of the present case. The statute makes the new body the successor of the public utilities commission, the functions of which are devolved upon it. (Laws 1920, Special Session, ch. 29, § 2.) It, therefore, has a legal existence unless that commission was a nullity, which is not suggested. The legislature has undertaken to grant it, among other additional powers, those of investigating certain controversies relating to the operation

of various industries, including coal mining, and of taking evidence and making findings thereon. (§ 7.) Its proceedings are required to be reported to the governor. (§ 27.) It is clear that it would be competent for the legislature to authorize an administrative tribunal to make such investigations, findings, and reports, even if no further purpose were to be accomplished than to give publicity to existing conditions and provide data upon which subsequent legislation might be based. The act also undertakes to empower the court to make orders with reference to the conduct of the industry—among other things, to regulate wages. (§ 8.) Whether or not the legislature could confer all the powers so attempted to be given—for instance, that to which specific reference has just been made— we have no doubt whatever that it could invest the industrial court with some of them. The legislature may of course enact statutes designed (for example) to protect the health and safety of miners, and may authorize an administrative body to make rules in that connection having the force of laws. (*Richards v. Coal Co.*, 104 Kan. 330, 179 Pac. 380; 12 C. J. 847-853.) Regulations of that kind would be within the scope of the act under consideration. Inasmuch as the police power extends to the protection of the welfare and convenience, as well as the health, safety and morals of the public, it may manifestly be invoked—as in the present instance—to prevent the interruption in the production of a commodity so vitally necessary to the people of this state as coal, so long as the means employed are not for some special reason obnoxious to constitutional provisions. There is abundant field for the operation of the act under consideration even if every portion of it to which a specific objection has been urged were entirely eliminated.

2. It is quite clear that the part of the act relating to the conduct of an investigation could be upheld, although some of the attempted grants of power should be held void, even if the statute contained no reference to the effect of partial invalidity. However, one section of it reads as follows:

"If any section or provision of this act shall be found invalid by any court, it shall be conclusively presumed that this act would have been passed by the legislature without such invalid section or provision, and the act as a whole shall not be declared invalid by reason of the fact that one or more sections or provisions may be found to be invalid by any court." (Laws 1920, Special Session, ch. 29, § 28.)

The rule is familiar that a part of a statute which is unobjectionable in itself may be enforced notwithstanding another part is adjudged unconstitutional, if it appears that the void portion was not an inducement to the enactment of the rest—that the legislature desired the unobjectionable part to become a law irrespective of the validity of the remainder. Here the express declaration disposes of any possible doubt that might otherwise exist as to the legislative intent, and requires the court to give effect to all portions of the statute that do not in themselves violate some constitutional provision. (*The State v. Wilson,* 101 Kan. 789, 806, 168 Pac. 679.)

3. No reasons are suggested, and none occur to us, why the legislature may not authorize the court of industrial relations to conduct an inquiry into conditions existing in the mining field, and in furtherance of that inquiry require the attendance of witnesses. Much of the argument in behalf of the defendants is based upon objections to the provisions of the statute undertaking to restrain the conduct of employees in the mining industry and others classified with it. As already indicated, the validity of those provisions is not and could not be involved here. It is elementary that a statute can be attacked on constitutional grounds only by one whose right as guaranteed by the constitutional provision invoked is being assailed under color of the statute. The defendants in their character as witnesses whose attendance before the court is sought in order that they may give information concerning the subject of inquiry, have no standing to question the validity of any provisions of the statute other than those directly involved, for they could suffer no possible injury therefrom in this proceeding. The constitutionality of a statute is inquired into by a court no further than is necessary to a determination of the case before it. These familiar principles preclude any consideration at this time of most of the objections to the judgment upon constitutional grounds which the defendants first urged, then withdrew, and later renewed. Counsel for the state have shown a readiness to meet upon the merits the objections made to various provisions of the statute, but until these provisions are attacked by some one competent to question their validity—by some one whose rights in respect to the subject matter of the litigation are injuriously affected by them —any expression of opinion by the court would be dictum.

The State, *ex rel.*, v. Howat.

4. It is suggested that the evidence did not warrant a finding that the defendants had refused to testify. It was shown without contradiction that after they had been served with an order of the district court to appear forthwith before the court of ·industrial relations to give their testimony, they were in another room of the building where that court was sitting, and told the sheriff, who came to them on account of an inquiry by the presiding judge, that they were having a little meeting of their own and would be through in about ten minutes; that they did not then appear, and at no time showed any disposition to obey the process; and that the defendant Howat said they wouldn't come unless they were taken. Any defect that may exist in the way of formal proof on the subject is rendered entirely immaterial by the objections the defendants are still urging to the validity of the law and by the fact that, as already stated, they were committed only until such time as they should submit to be sworn and testify, so that they could at any moment have obtained their liberty by signifying their willingness to do so.

5. The occasion for the aid of the district court being invoked to require the attendance of witnesses before the court of industrial relations arises from the well-understood fact that the latter body, in spite of its name, is an administrative and not strictly a judicial tribunal, and is therefore regarded as incapable of enforcing its own process. (*In re Sims,* Petitioner, 54 Kan. 1, 37 Pac. 135; *In re Huron,* 58 Kan. 152, 48 Pac. 574.) The defendants argue that the district court under the statute is without authority to compel the attendance of a witness before any other tribunal than itself. The industrial court act, however, contains this provision:

"In case any person shall fail or refuse to obey any summons or subpœna issued by said court [of industrial relations] after due service then and in that event said court is hereby authorized and empowered to take proper proceedings in any court of competent jurisdiction to compel obedience to such summons or subpœna." (Laws 1920, Special Session, ch. 29, § 11.)

We interpret this language as authorizing the procedure here followed—the issuance and service of an order by the district court requiring the defendants to appear before the court of industrial relations, and their commitment for contempt for

refusing to obey that order. The district court, being one of general jurisdiction, is obviously a proper tribunal to which to apply for the needed aid, and the method pursued is one naturally adapted to the end sought. The constitutionality of the provision quoted has not been challenged except by an objection relating to the title, which will be mentioned later. A similar feature of the federal law relating to the attendance of witnesses before the interstate commerce commission has been upheld against the contention that the action of a court in requiring a witness to appear before an administrative body was nonjudicial. (*Interstate Commerce Comm. v. Brimson,* 154, U. S. 447, 155 U. S. 1.) The arguments upon both sides of that question are so fully set out in the opinions cited that further discussion is regarded as unnecessary. We hold the provision to be valid.

6. The defendants suggest that they are protected by the guaranty of the state constitution against a witness being required to incriminate himself (Bill of Rights, § 10), because they were among the persons named as interested in the controversy which was the basis of the investigation instituted by the industrial court. It cannot be said that any question that might be put to the defendants as witnesses would necessarily call for a reply tending to incriminate them. Until they had appeared and some question had been asked, there could be no basis for forming a judgment as to whether or not they were entitled to refuse to answer.

7. The point is sought to be made that the governor had no authority to call the special session of the legislature at which the industrial-court act was passed, because no extraordinary occasion therefore existed. The governor is the final judge of that question. (*Farrelly v. Cole,* 60 Kan. 356, 56 Pac. 492.)

8. The title of the act under consideration reads:

"An Act creating the court of industrial relations, defining its powers and duties, and relating thereto, abolishing the public utilities commission, repealing all acts and parts of acts in conflict therewith, and providing penalties for the violation of this act."

The contention is made that this is insufficient and the provision of the state constitution with reference thereto (Art. 2, § 16) is therefore violated, because the title refers to a court, and the body undertaken to be created is not judicial in its

character. The word court is often employed in statutes otherwise than in its strict technical sense, and is applied to various tribunals not judicial in their character. Instances may be found in Words and Phrases Judicially Defined, of which an illustration is *Aldrich v. Aldrich,* 49 Mass. 102, 106.

The provision of the act already quoted, authorizing the district court to aid in requiring the attendance of witnesses before the industrial court, is objected to as foreign to the title. The title includes the words—"AN ACT creating the court of industrial relations . . . and relating thereto." The provision in question certainly has relation to the new tribunal and is pertinent to the subject expressed. Other objections are made on the ground that the title is too restrictive. We think them not well taken, but as the provisions to which they relate could be disregarded without affecting the result of the present case, we deem it unnecessary to set them out.

The act (§ 2) undertakes to confer upon the court of industrial relations the powers previously vested in the public utilities commission, which it succeeds. It is argued that this method of legislating violates the provision of the section of the constitution already referred to, which forbids the revival or amendment of a law unless the new act contain the entire act revived or the section or sections amended. This provision, however, does not prevent legislation by reference (*The State v. Shawnee County,* 83 Kan. 199, 110 Pac. 92), and the objection is not sound.

It is contended that the act is void because executive, legislative and judicial functions are commingled in the grants of power to the court of industrial relations, within the authority of *The State v. Johnson,* 61 Kan. 803, 60 Pac. 1068. The opinion in that case was written while the principles controlling the place in government of administrative boards was in the process of development. It is possible that language may have been there used which might require some modification before its acceptance as having universal application. But the vital grounds upon which the statute there considered was held void do not exist here. The present law bears internal evidence of having been drawn with a view to avoiding the features of the court-of-visitation act, upon which the decision cited was based. The function of a tribunal of the general character of

the court of industrial relations has become so fully recognized that we do not regard it as necessary to undertake a review of the subject at this time. (6 R. C. L. 179.)

9. It is urged that the following provisions of the act are invalid for the reasons indicated:

That authorizing proceedings in the supreme court to enforce compliance with the orders of the court of industrial relations, in which new evidence may be admitted (§ 12), because this amounts to an attempt to enlarge the original jurisdiction of the former body.

That authorizing the supreme court to compel the court of industrial relations under certain circumstances to enter just, reasonable and lawful orders (§ 12), because this undertakes to confer legislative power on the supreme court;

That authorizing the court of industrial relations to modify the terms of contracts of employment which are found to be unfair, unjust, or unreasonable (§ 9), because it violates the 14th amendment to the federal constitution;

That forbidding the discharge of an employee because of his testifying before the court of industrial relations, or bringing to its attention any matter of controversy between employers and employees (§ 15), for the same reason;

That requiring employers to keep a record of wages paid (§ 23), for the same reason;

That forbidding employees to conspire to quit their employment for the purpose of interfering with the operation of the industry (§ 17), for the same reason;

That forbidding a conspiracy to do injury to others by picketing on account of anything done by the court of industrial relations, or under its orders, or of its aid having been invoked (§ 15), because it involves a denial of free speech.

We think it obvious that none of these matters are involved in the present case.

10. Finally, it is contended that the act is void as an attempt to interfere in matters of purely federal jurisdiction—that the national government has so fully occupied the ground attempted to be covered by the industrial-court law that there is no field left in which the latter may operate. The agencies which the defendants regard as bringing about this result are:

The entrance into an interstate contract between the inter-

national officers of the United Mine Workers of America and the representatives of the Coal Operators' Association of the United States at the conclusion of the coal strike a little over six months ago;

The appointment by the president of a commission to hear and determine matters of hours, wages and conditions in the mining industry in the United States;

The Clayton act (Part 1, 38 U. S. Stat. at Large, 730), relating to unlawful restraints and monopolies in interstate commerce, particularly the portion thereof (§ 20) which forbids federal courts to grant injunctions against certain conduct of employees, of which ceasing to perform work is an illustration, and which declares that such conduct shall not be held to be violative of any law of the United States;

The Lever act (Part 1, 40 U. S. Stat. at Large, 276), providing for governmental control of the production and distribution of food and fuel until the termination of the war.

It is quite possible that the scope of the authority of the court of industrial relations may be limited in some respects by these agencies—that a particular order made by that body might be found to be ineffective, for instance, because in conflict with some lawful order of a federal officer or body, or because constituting an undue interference with interstate commerce. We think it too clear to require elaboration that whatever restrictions may be thus placed on local action, it cannot be true that the state has no power to conduct investigations along at least some of the lines indicated and to attempt the remedy of certain classes of abuses that may be found to exist. The suggestion is made that the court should take judicial notice of an injunction granted against the defendant Howat by a federal court, and of a number of matters in connection therewith, and that the judgment of the district court in the present case should be reversed by reason thereof. We are unable to discover that anything in the facts recited either disqualifies the defendants as witnesses or gives them any immunity from testifying. It would be utterly futile in a proceeding the sole purpose of which is to require obedience to a subpœna, to undertake to determine in detail the effect and validity of the various provisions of the statute attacked—to

attempt to indicate in advance as an abstract matter what decision will be made when an actual controversy shall arise in which the rights of the parties depend upon the soundness of the graver propositions of law that have been advanced by the defendants.

The judgment is affirmed.