**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**September 3, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

ROBBIN MESSERLI, individually and as
personal representative of the Estate of
Decedent Kyle Messerli, and on behalf of
all others similarly situated,

    Plaintiff - Appellant,

v.

AW DISTRIBUTING, INC.; AW
PRODUCT SALES & MARKETING,
INC.; FALCON SAFETY PRODUCTS,
INC.; NORAZZA, INC.,

    Defendants – Appellees.

------------------------------

KANSAS TRIAL LAWYERS
ASSOCIATION; KANSAS
ASSOCIATION OF DEFENSE
COUNSEL,

    Amici Curiae.

No. 23-3241

_____

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 2:22-CV-02305-DDC-TJJ)**
_____

Ruth Anne French Hodson (Rex A. Sharp and Sarah T. Bradshaw, with her on the briefs),
Sharp Law, LLP, Prairie Village, Kansas, for Plaintiff-Appellant.

Stephen E. Nichols, Shook, Hardy & Bacon L.L.P., Kansas City, Missouri (Scott D.
Kaiser and Holly Pauling Smith, Shook, Hardy & Bacon L.L.P., Kansas City, Missouri,

and Mitchell B. Malachowski and James Sell, Tyson & Mendes, Novato, California, with him on the brief) for Defendants-Appellees.

Joe M. McGreevy, McGreevy Law, LLC, Westwood, Kansas, filed an Amici Curiae Brief on behalf of the Kansas Trial Lawyers Association.

Connor M. Russo, Fisher, Patterson, Sayler & Smith, LLP, Overland Park, Kansas, filed an Amicus Curiae Brief on behalf of the Kansas Association of Defense Counsel.

_____

Before **TYMKOVICH**, **PHILLIPS**, and **CARSON**, Circuit Judges.

_____

**TYMKOVICH**, Circuit Judge.

_____

This products liability case arises from Kyle Messerli's death from his abuse of the gas inside computer duster cans. The gas, Difluoroethane, can be addictive and lead to serious injury or death. Kyle became addicted, inhaling four or more cans each day. He overdosed and died of acute Difluoroethane intoxication.

His father, Robbin Messerli, individually and on behalf of his son's Estate, brought a wrongful death and survival action against four manufacturers and distributors of computer dusters. The complaint asserted products liability claims under Kansas Law, alleging that the defendants knew their products were often abused, but inadequately worked to reduce the potential harm to abusers.

The defendants moved to dismiss the complaint, arguing that because inhaling computer duster is a crime in Kansas, Messerli's claims are barred by the illegality defense. Under Kansas law, tort claims are barred when the plaintiff's illegal act has a causal connection to his injuries. The district court agreed, granting the defendants' motion to dismiss.

2

We **AFFIRM**.  The illegality defense exists under Kansas common law, and absent abrogation by the Kansas Legislature or the Kansas Supreme Court, it is still good law.  Nor are we convinced that the Kansas Supreme Court would abrogate the illegality defense.  Accordingly, Messerli cannot recover where the injury was caused by Kyle's illegal conduct.

## I.    Background

Defendants in this case are manufacturers and distributors of computer dusters. These dusters contain the liquified gas 1,1-Diflueoroethane (DFE).  DFE is a halogenated hydrocarbon that, when inhaled, produces an immediate, intense high.

DFE is just one of many chemicals that are commonly abused through inhalation, also called "huffing."  Inhalant abuse is widespread—in a 2020 survey, 2.4 million people aged 12 and over reported abusing inhalants.  App. 11. Commonly abused inhalants include spray paint, paint thinner, gasoline, helium, glue, and various aerosol cleaners.

To curb inhalant abuse, Kansas outlawed "possessing, buying, using, smelling or inhaling toxic vapors with the intent of causing a condition of euphoria, excitement, exhilaration, stupefaction or dulled senses of the nervous system."  KAN. STAT. ANN. § 21-5712.[1]  Halogenated hydrocarbons like DFE are among the toxic

---

[1] The statute reads in full:

> (a) Unlawful abuse of toxic vapors is possessing, buying, using, smelling or inhaling toxic vapors with the intent of

vapors the statute outlaws. § 21-5712(e)(7). Abusing computer duster is a class B misdemeanor which can result in a jail sentence or fine and requires the completion of a drug education or treatment plan. § 21-5712(b)–(c).

Kansas outlawed DFE abuse for good reason. Between 2011 and 2018, DFE resulted in more emergency room visits than all other inhalants combined. App. 30–

---

causing a condition of euphoria, excitement, exhilaration, stupefaction or dulled senses of the nervous system.

(b) Unlawful abuse of toxic vapors is a class B nonperson misdemeanor.

(c) In addition to any sentence or fine imposed, the court shall enter an order which requires that the person enroll in and successfully complete an alcohol and drug safety action education program, treatment program or both such programs as provided in K.S.A. 8-1008, and amendments thereto.

(d) This section shall not apply to the inhalation of anesthesia or other substances for medical or dental purposes.

(e) For the purposes of this section, the term "toxic vapors" means vapors from the following substances or products containing such substances:

> (1) Alcohols, including methyl, isopropyl, propyl or butyl; (2) aliphatic acetates, including ethyl, methyl, propyl or methyl cellosolve acetate; (3) acetone; (4) benzene; (5) carbon tetrachloride; (6) cyclohexane; (7) freons, including freon 11, freon 12 and other halogenated hydrocarbons; (8) hexane; (9) methyl ethyl ketone; (10) methyl isobutyl ketone; (11) naptha; (12) perchlorethylene; (13) toluene; (14) trichloroethane; or (15) xylene.

(f) In a prosecution for a violation of this section, evidence that a container lists one or more of the substances described in subsection (e) as one of its ingredients shall be prima facie evidence that the substance in such container contains toxic vapors.

KAN. STAT. ANN. § 21-5712.

4

31.  DFE is highly addictive, and abuse can cause serious health complications, including skeletal fluorosis, bone fractures, chemical burns, multiple forms of cardiac disfunction, kidney failure, seizures, and brain damage.  App. 38–40.  If enough DFE is inhaled, intoxication is fatal—commonly called Sudden Sniffing Death Syndrome.

Kyle Messerli tragically died of acute DFE intoxication.  After a coworker introduced Kyle to huffing computer duster, he became addicted.  Eventually he was huffing four or more cans each day.  He would travel to multiple retailers to purchase containers to avoid raising suspicions.  He stopped showing up to work and lost his job, so he overdrew his bank account and racked up credit card debt to feed his addiction.  On August 1, 2020, Kyle was found unconscious.  He died two days later.

Robbin Messerli sued several manufacturers of the computer duster on behalf of himself and his son's Estate.  He alleged violations of Kansas products liability law, contending the defendants knew or should have known that their products were being abused by consumers, causing serious injuries and death.  In his complaint, he alleged the defendants refused to provide appropriate design, labeling, marketing, testing, and warnings.  Even after they were pressured by retail partners, the manufacturers added a bitterant which Messerli alleges was not only ineffective but made DFE easier to inhale.  Messerli argues that the defendants' products were responsible for his son's death, and they failed to produce a reasonably safe product.

The defendants moved to dismiss all claims.  They argued that Kansas law bars a party from recovering when his illegal acts proximately caused his injuries.

5

And because huffing computer duster is illegal, and the claims all hinged on injuries sustained from huffing, Kansas law bars Messerli's products liability claims.

The district court dismissed his claims. It ruled that the illegality defense existed at common law and was not abrogated by Kansas's comparative fault statute. The district court further predicted that the Kansas Supreme Court would apply the defense to products liability claims even though Kansas abrogated common law contributory negligence.

Following this ruling, Messerli moved to certify the question to the Kansas Supreme Court. The district court denied his motion, reasoning that motions to certify that come after an adverse ruling on state law are generally disfavored.

Messerli appeals the dismissal of his claims and renews his motion to certify the question.

## II.    Discussion

Messerli claims that the court erred in dismissing his products liability claims. He contends first, that no Kansas court had ever applied the illegality defense to products liability claims, and it would be inappropriate to do so here. Second, because Kansas adopted a comparative fault framework, the question of Kyle's culpability in his death should be left to the jury, not foreclosed by the court.

We review the grant of a motion to dismiss de novo. *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1298 (10th Cir. 2018). A plaintiff must state a claim that is facially plausible; that is, the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the

6

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  We dismiss a claim based on an affirmative defense "when the complaint itself admits all the elements of the affirmative defense." *Fernandez*, 883 F.3d at 1299.

The district court had diversity jurisdiction under 28 U.S.C. § 1332.  In a diversity action, we apply the substantive law of the forum state.  *Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1170 (10th Cir. 2010).  Here, we apply Kansas law.

### A.    Kansas Product Liability Law

Kansas adopted a legislative scheme governing manufacturer liability, the Kansas Product Liability Act.  *See* KAN. STAT. ANN. §§ 60-3301 *et seq*.  The KPLA merges all legal theories of products liability into a single product liability claim. *See Baumann v. Excel Indus., Inc.*, 845 P.2d 65, 70 (Kan. App. 1993) (explaining the scope of the legislation).  But where the KPLA is silent, the gaps are filled by Kansas common law.  *See Gaumer v. Rossville Truck & Tractor Co.*, 257 P.3d 292, 299–300 (Kan. 2011).  Most significantly, this means that a manufacturer's duty extends beyond the product's intended use to any "reasonably foreseeable" use, *Kennedy v. City of Sawyer*, 618 P.2d 788, 794 (Kan. 1980)—that includes foreseeable misuse, *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1104 (10th Cir. 1991).  Manufacturers must provide warnings for foreseeable misuses.  *Richter v. Limax Int'l, Inc*., 45 F.3d 1464, 1471 (10th Cir. 1995).

But this potential liability is subject to several affirmative defenses. Affirmative defenses are those that, if the defendant proves the elements, negate all

7

liability even if the defendant committed the alleged wrongful acts. KAN. STAT. ANN. § 60-208(c)(1) provides a non-exhaustive list of affirmative defenses which must be affirmatively stated in the response to a pleading. *See* KAN. STAT. ANN. § 60-208(c)(1). Among those is the illegality defense. KAN. STAT. ANN. § 60-208(c)(1)(H).[2]

The district court concluded that the illegality defense bars Messerli's claim.[3] Messerli argues that even if the defense did exist at common law, it was abrogated by Kansas's comparative negligence statute and the Kansas Supreme Court's subsequent expansion. He argues that the Kansas Supreme Court would not apply the defense because it has set forth a general policy against all-or-nothing defenses that existed at common law.

---

[2] In part, § 60-208(c)(1)(H) provides:

> (c) Affirmative defenses. (1) In general. In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including: . . . illegality . . . .

KAN. STAT. ANN. § 60-208(c)(1)(H).

[3] Messerli also argues the district court inappropriately conflated three affirmative defenses: *in pari delicto*, illegality, and wrongful conduct. These are three separate, but analogous defenses. *See Zimmerman v. Brown*, 306 P.3d 306, 312–16 (Kan. App. 2013); *Inge v. McClelland*, 725 F. App'x 634 (10th Cir. 2018) (unpublished). The illegality defense requires only that the plaintiff's illegal acts are the proximate cause of the injury, *Zimmerman*, 306 P.3d at 315, *in pari delicto* prevents the court from interceding between two culpable parties, *id.*, and the wrongful-conduct doctrine prevents a plaintiff from relying on his own illegal or immoral acts, *Inge*, 735 F. App'x at 638. Each defense applies in different circumstances, but all are based on the principle that the plaintiff should not benefit from his own wrongdoing.

8

To assess these arguments, we consider first, whether the illegality defense was available at common law; second, whether Kansas's comparative negligence regime abrogated the illegality defense; and third, if not, whether the Kansas Supreme Court would abrogate the defense.

### 1.     The Illegality Defense at Common Law

The Kansas Supreme Court has long recognized "[t]he general rule . . . that a plaintiff will not be permitted to recover when it is necessary for him to prove his own illegal act or contract, as a part of his cause of action." *Kansas City v. Orr*, 61 P. 397, 399 (Kan. 1900) (recognizing the illegality defense to a negligence claim); *see also Richards v. Fleming Coal Co.*, 179 P. 380, 382 (Kan. 1919). The common-law rule in Kansas was that the illegal act must have a causal connection to the injury. *Beggerly v. Walker*, 397 P.2d 395, 401 (Kan. 1964) ("Before a wrongdoer is deprived of the law's protection, his illegal act must have a causal connection with his injury . . . .").

The KPLA does not explicitly abrogate or affirm the illegality defense, so we turn to common law. *See Gaumer*, 257 P.3d at 299–300 ("the Kansas common law of product liability retains its essential vitality on all issues not settled by passage of the KPLA"). Recent Kansas cases confirm that the illegality defense is still available in tort actions. As recently as 2013, the Kansas Court of Appeals explained that a defendant may "properly assert an illegality defense in a tort action" when it proves "the illegal act was the proximate cause of the plaintiff's injury." *Zimmerman v. Brown*, 306 P.3d 306, 315 (Kan. App. 2013). And even after the adoption of the

9

comparative negligence regime, Kansas courts have applied the illegality defense to intentional torts, *McKenzie v. Foley*, 1995 WL 18253130, at *3 (Kan App. Aug. 11, 1995) (unpublished), insurance indemnification, *Thomas v. Benchmark Ins.*, 140 P.3d 438, 449 (Kan. App. 2006), and legal malpractice, *Zimmerman*, 306 P.3d at 315 (recognizing the defense, but denying its application).

Messerli suggests that these cases are unique to their causes of action and that they do not prove the illegality defense applies to products liability actions. But *Zimmerman* specifically says illegality is a "defense in a *tort* action." *Zimmerman*, 306 P.3d at 315 (emphasis added). Products liability is, of course, a species of tort action. *See generally* RESTATEMENT (THIRD) OF TORTS: PRODS. LIAB. INTRO. (A.L.I. 1998) (describing the evolution of strict liability for defective products within modern tort law). Nor does the illegality defense conflict with the KPLA. We "presume legislatures do not intend to alter or abrogate the common law unless a statute makes clear such an intention." *Ed DeWitte Ins. Agency, Inc. v. Fin. Assocs. Midwest, Inc.*, 427 P.3d 25, 30 (Kan. 2018). The KPLA evinces no clear intention to alter this aspect of the common law.

Other states have also applied illegality or wrongful-conduct defenses to products liability claims. *See, e.g.*, *Jacobson v. Pfizer, Inc.*, 618 F. App'x 509, 511 (11th Cir. 2015) (applying the wrongful-conduct defense to a Florida products liability claim); *Price v. Purdue Pharma Co.*, 920 So. 2d 479, 484–85 (Miss. 2006) (same in Mississippi); *Pappas v. Clark*, 494 N.W.2d 245, 247 (Iowa Ct. App. 1992) (noting that illegality applies to all actions in Iowa); *Orzel by Orzel v. Scott Drug*

10

*Co.*, 537 N.W.2d 208, 214 (Mich. 1995) (recognizing "compelling reasons for applying the wrongful-conduct rule in all cases in which the plaintiff's claim is based on his illegal conduct," but noting exceptions).  We see no reason Kansas law would differ from these states.

The illegality defense existed for all tort actions at common law—that includes products liability actions.  Without clear abrogation from the Kansas Legislature or Kansas Supreme Court, it is still available to defendants.

### 2.     *Kansas's Comparative Negligence Regime*

Messerli contends that Kansas's comparative negligence scheme has swept aside all-or-nothing defenses, including the illegality defense.  He points to the statutory adoption of comparative negligence and the subsequent judicial expansion to support the general proposition that juries decide questions of relative fault in Kansas.

In 1974, Kansas adopted a comparative negligence statute for negligence torts. KAN. STAT. ANN. § 60-258a.[4]  This replaced traditional common-law contributory

---

[4] The statute provides in relevant part:

> (a) Effect of contributory negligence. The contributory negligence of a party in a civil action does not bar that party or its legal representative from recovering damages for negligence resulting in death, personal injury, property damage or economic loss, if that party's negligence was less than the causal negligence of the party or parties against whom a claim is made, but the award of damages to that party must be reduced in proportion to the amount of negligence attributed to that

negligence, which prevented any recovery if the injured party was even slightly responsible. *See Guerra v. Jaeger*, 461 P.2d 737, 741 (Kan. 1969). Under comparative negligence, the jury assigns fault and the injured party's recovery is reduced by his percentage of liability so long as it is below 50%. § 60-258a. At 50% liability or above, the injured party recovers nothing. *Id.*

Although § 60-258a explicitly abrogates contributory negligence, later cases by the Kansas Supreme Court have expanded its general scope in several respects. In *Kennedy v. City of Sawyer*, 618 P.2d at 796 (Kan. 1980), for example, the Kansas Supreme Court held that the rationale of comparative negligence applied to products liability claims and to "analogous" products defenses.[5] The Kansas Court specifically abrogated the assumption of risk, product misuse, and unreasonable use defenses because it questioned whether "a party's conduct is considered so culpable as to bar that party from all recovery." *Id.* The Court declared a preference for

---

> party. If a party claims damages for a decedent's wrongful death, the negligence of the decedent, if any, must be imputed to that party.

KAN. STAT. ANN. § 60-258a(a)

[5]*Kennedy* adopted the "analogous defense" test from *Arredondo v. Duckwall Stores, Inc.*, 610 P.2d 1107, 1110 (Kan. 1980). In *Duckwall Stores*, the Kansas Court held that the comparative negligence statute applied even in a negligence per se action premised on the violation of a criminal statute. *Id.* The Court held "[i]t is now the declared public policy of this state, speaking through the legislative voice, that the parties whose conduct brings about death, personal injury, or property damage, bear responsibility based upon the proportionate fault of each actor." *Id.* at 1113. While this strong declaration of policy factors into our Erie guess, *see infra* Section 3, it does not control our case because the Court never discussed illegality as an affirmative defense.

comparative liability because the scheme "allocat[es] responsibility for an injury while still serving the social policy of not allowing a manufacturer or seller to escape liability for defective products merely because of slight culpability on the part of the product user in bringing about the injury." *Id.* Thus, "the all or nothing concepts are swept aside." *Id.* at 798.

Messerli points to *Kennedy* and cases applying it to suggest that Kyle's illegal conduct should not *completely* bar his recovery, but rather a jury should decide whether and how much it *reduces* his recovery. He argues that illegality is an "analogous defense" to contributory negligence that was "swept aside."

We disagree. Nothing in Kansas statutes or caselaw explicitly abrogates the illegality defense. Nor is the illegality defense so inconsistent with comparative negligence that it was implicitly abrogated; we have rejected a similar argument, as have other state courts.

As discussed above, Kansas's comparative fault statute only explicitly abrogates contributory negligence. *See* KAN. STAT. ANN. § 60-258a. Although the Kansas Supreme Court has expanded the general principle and invalidated other defenses on similar policy grounds, *see, e.g.*, *Simmons v. Porter*, 312 P.3d 345, 355 (Kan. 2013) (assumption of risk); *Kennedy*, 618 P.2d at 796 (misuse and unreasonable use), it has never negated the illegality defense.

Messerli recognizes that Kansas courts still apply the illegality defense, *see, e.g.*, *McKenzie*, 1995 WL 18253130, at *3 (intentional torts); *Thomas*, 140 P.3d at 449 (contracts); *Zimmerman*, 306 P.3d at 315 (legal malpractice), but he argues that

13

intentional torts and contract indemnification cases are dissimilar comparators because they are not subject to comparative fault defenses.  But at the very least, "[l]egal malpractice *is* a form of negligence," and is subject to comparative negligence.  *Pizel v. Zuspann*, 795 P.2d 42, 52 (Kan. 1990) (quoting *Becker v. Port Dock Four, Inc.*, 752 P.2d 1235, 1239 (Or. App.1988)).  And in *Zimmerman*, the Kansas Court of Appeals considered the illegality defense in a legal malpractice action.  This case cannot be squared with the argument that the illegality defense was implicitly abrogated by the comparative negligence regime.

We considered a comparable argument in *Inge v. McClelland*, 725 F. App'x 634 (10th Cir. 2018) (unpublished).[6]  In that case, plaintiffs sued a pharmacist who had illegally prescribed opioids to them, even though he knew there was no medical benefit and that plaintiffs were abusing the narcotics.  The federal district court ruled that New Mexico's wrongful-conduct doctrine barred them from recovering.  We affirmed, even though New Mexico also has a comparative fault framework, because "New Mexico law clearly precludes them from obtaining relief on a claim based on their own illegal conduct."  *Id.* at 638.  Under New Mexico law, we recognized "that the wrongful-conduct doctrine is compatible with the comparative-fault framework."  *Id.*

This case is instructive since wrongful conduct is analogous to the illegality and *in pari delicto* defenses.  *Id.* at 639 ("based on the principle of *in pari delicto*,

---

[6] We are not bound by *Inge* both because it is unpublished and because it applies New Mexico law.  But we are nevertheless persuaded by its analysis.

14

which is analogous to the wrongful-conduct doctrine").  We recognized in *Inge* that these defenses do not set out to apportion fault, as comparative fault does, but instead prevents injured parties from benefitting from their own illegal acts.  *Id.*

Other states have reached similar conclusions—"we do not agree the [relevant] illegal conduct merely constitutes contributory negligence."  *Pappas*, 494 N.W.2d at 247; *see also Greenwald v. Van Handel*, 88 A.3d 467, 476 (Conn. 2014) ("[W]e agree with other jurisdictions that have concluded that the mere availability of common-law or statutory comparative negligence, which permits a plaintiff to recover even if his own negligence contributed to his injuries does not negate application of the wrongful conduct rule." (citation omitted)); *Ryan v. Hughes-Ortiz*, 959 N.E.2d 1000, 1004 (Mass. Ct. App. 2012) ("We conclude that public policy dictates that [the decedent's] criminal conduct acts as a bar to recovery. . . . The comparative negligence statute, G.L. c. 231, § 85, does not require a different result.").

Likewise, the illegality defense is still recognized in the Restatement (Second) of Torts § 889 (A.L.I. 1979).  The Restatement states that "if the injured person has violated a statute designed to prevent a certain type of risk, he is barred from recovery for harm caused by violation of the statute if, but only if, the harm resulted from a risk of the type against which the statute was intended to give protection." § 889 cmt. b (1979).  It also provides that the defense falls "under the rules stated with reference to contributory negligence and contributory recklessness" only if the plaintiff engages in "[c]riminal conduct that by virtue of statutory interpretation or

15

otherwise constitutes negligence or recklessness." *Id.*; *see also* 1A AMERICAN LAW OF TORTS, § 5:15 ILLEGALITY (concluding that "[t]he 'illegality defense' is based on the principle that a party who consents to and participates in an illegal act may not recover from other participants for the consequences of that act.").

The Restatement reflects the consistent policy rationale across jurisdictions. "The public policy behind this rule is that a court should not lend its aid to a man who founds his cause of action upon an immoral or illegal act." *Inge*, 725 F.App'x at 638 (citation modified). The American Law of Torts elaborates that illegality "is not a justification defense as it is a limitation on liability in civil actions premised on the notion that a plaintiff should not recover for injuries that are sustained as the direct result of his or her knowing and intentional participation in a criminal act." § 5:15 n.1 (citing *Burke v. Mesniaeff*, 220 A.3d 777, 792 (Conn. 2019)). In fact, the treatise cites cases that confirm the defense depends solely on the plaintiff's actions. *See id.* § 5:15 n.2 ("The illegality defense is based on the principle that a party who consents to and participates in an illegal act may not recover in tort from other participants for the consequences of that act." (citing *Lee v. Nationwide Mut. Ins.*, 497 S.E.2d 328 (Va. 1998)).

And this policy rationale distinguishes illegality from comparative negligence and its analogous defenses. The New York Court of Appeals, for example,

16

recognized that the illegality defense is based on the principle that plaintiffs should not be compensated for injuries that "involve a substantial violation of law."

> That rule is not based on the theory that a plaintiff, with an otherwise cognizable cause of action, cannot recover for an injury to which he has contributed. It rests, instead, upon the public policy consideration that the courts should not lend assistance to one who seeks compensation under the law for injuries resulting from his own acts when they involve a substantial violation of the law. It simply means that proof of such an injury would not demonstrate any cause of action cognizable at law. The policy which applies to this case, has always existed independently from the rule of contributory negligence and its successor, comparative negligence.

*Barker v. Kallash*, 468 N.E.2d 39, 43–44 (N.Y. 1984) (citations omitted).

Although *Kennedy* abrogated "analogous defense[s]" in Kansas, 618 P.2d at 796, we are persuaded that the illegality defense is sufficiently different than contributory negligence, so *Kennedy* does not apply here.

Messerli points to *Dugger v. Arredondo*, 408 S.W.3d 825 (Tex. 2013), for a contrary position. In that case, the Texas Supreme Court held "that the common law unlawful acts doctrine is not available as an affirmative defense in personal injury and wrongful death cases. Like other common law assumption-of-the-risk defenses, it was abrogated by [the Texas statutory] proportionate responsibility scheme." *Dugger*, 408 S.W.3d at 836. That Court found that "[n]othing in [the proportionate responsibility statute] or in our case law suggests that the unlawful acts doctrine acts as an exception to the proportionate responsibility scheme." *Id.* at 832. Messerli encourages us to adopt this reasoning.

17

But Texas departs from other cases because of statutory text.  The relevant language of Texas's proportionate responsibility statute specifically abrogates the illegality defense:

> The trier of fact . . . shall determine the percentage of responsibility . . . with respect to *each person's* causing or contributing to cause in *any* way the harm for which recovery of damages is sought, whether by negligent act or omission, by any defective or unreasonably dangerous product, *by other conduct or activity that violates an applicable legal standard* . . . .

*Id.* (emphases in original) (quoting TEX. CIV. PRAC. & REM. CODE § 33.003(a)).  Accordingly, "[t]*he language of the statute* indicates the Legislature's desire to compare responsibility for injuries rather than bar recovery, *even if the claimant* was partly at fault or *violated some legal standard*."  *Id.* (emphases added).

Kansas's comparative negligence scheme and the subsequent expansion from the Kansas Supreme Court does not explicitly abrogate the illegality defense.  And consistent with our decision in *Inge*, and the rationales from other states, we do not believe that the comparative negligence scheme abrogates the illegality defense.  Our holding follows the Restatement's conclusion that the illegality defense falls under comparative negligence rules only if statutory construction requires it.  There is nothing in Kansas statute or caselaw to suggest the illegality defense was implicitly abrogated.

### 3.    *Kansas Supreme Court*

Finally, the district court predicted that the Kansas Supreme Court would apply the illegality defense to products liability cases.  *See Pehle v. Farm Bureau*

18

*Life Ins. Co.*, 397 F.3d 897, 901 (10th Cir. 2005) ("Because [Kansas] has not directly addressed this issue, this court must make an Erie-guess as to how the [Kansas] Supreme Court would rule."). Messerli argues that, even if the defense has not yet been abrogated, the Kansas Supreme Court would not apply the illegality defense in cases like this one.

To cast doubt on the district court's prediction, Messerli points to the policy considerations in *Kennedy* and from other states to suggest that the Kansas Supreme Court would not adopt the illegality defense. Messerli argues that the Kansas Supreme Court has articulated a long-standing preference for allowing the jury to allocate fault. This policy has its strongest articulation in *Kennedy*. There, the Kansas Supreme Court stated clearly that allowing the jury to allocate fault is "an equitable resolution, on the one hand, of the social policy which commands that a manufacturer be deterred from producing defective and dangerous products, and, on the other hand, of the equitable policy . . . of assessing proportionate liability based upon comparative degrees of causation." *Kennedy*, 618 P.2d at 797. In fact, Messerli argues that the decision to apply comparative negligence to products liability in the first place was "to promote and enhance rather than frustrate what it considers to be the public policy declared by the legislature in enacting the modified comparative negligence statute." *Forsythe v. Coats Co.*, 639 P.2d 43, 46 (Kan. 1982).

But the policy argument behind the illegality defense is not based on allocating fault, but on the principle that the courts should refuse to allow a plaintiff to benefit from his own *illegal* act. The *degree* of the injured party's culpability is not at issue.

19

We are concerned only with whether we should aid a plaintiff who violated the law. In *Beggerly*, to justify the *in pari delicto* defense, the Court cited the American Jurisprudence of Torts. 397 P.2d at 401 (citing 52 AM. JUR. *Torts* § 92, pp. 436, 437). The current version of that treatise confirms that "[t]he courts refuse to aid those whose cause of action is based on their own illegal conduct." 74 AM. JUR. 2D *Torts* § 55.[7] As we explained, it is precisely because the policy rationales are so different that we do not believe illegality is one of the "analogous defense[s]" set forth in *Kennedy*. 618 P.2d at 796.

We think the public policy rationale for the illegality defense is different enough than that of comparative negligence that it is not an "analogous defense." *Kennedy*, 618 P.2d at 796. The Kansas Legislature decided that the jury is well-

---

[7] Even for *in pari delicto* defenses, where two parties are culpable, the rationale is still not their comparative culpability, but that "the courts will not intercede to resolve a dispute between two wrongdoers." 74 AM. JUR. 2D *Torts* § 55.

Although *in pari delicto* is analogous in its policy rationale, its application may lead to a different conclusion under Kansas law. The Kansas Supreme Court has recognized that *in pari delicto* "requires the court to weigh the wrongful acts of each party . . . to avoid allowing an overwhelmingly offensive act of the defendant to stand merely because the plaintiff's conduct was also wrongful, although slight." *Goben v. Barry*, 676 P.2d 90, 97 (Kan. 1984). If the Kansas Court believes that all weighing of comparative fault should be done by the jury, it may not recognize a judicially enforced *in pari delicto* defense. At the same time, *Goben* considers *in pari delicto* in a breach of contract case after *Kennedy* was decided and does not question its applicability. We offer no prediction as to how the Kansas Supreme Court would rule.

But the illegality defense does not require any comparative weighing. So any potential problems with *in pari delicto* do not apply in this case.

positioned to weigh the relative faults of two parties but this case is not about weighing fault. We are persuaded that in Kansas, like in other states, this rationale "has always existed independently from the rule of contributory negligence and its successor, comparative negligence." *Barker*, 468 N.E.2d at 43–44.

So we predict that the Kansas Supreme Court would apply the illegality defense in this case.

### B.    The Illegality Defense in this Case

Messerli's final argument is that applying the illegality defense is not appropriate in this case. He argues that the district court improperly drew inferences that Kyle freely and willingly inhaled computer duster and that the injury was the proximate cause of Kyle's death.

But these facts are evident from the complaint. The complaint alleges that Kyle was huffing upwards of four cans of duster per day, Compl. ¶ 39, and that acute DFE intoxication caused his death, *id.* ¶ 43. Taking these facts as true, the district court correctly concluded that Kyle violated KAN. STAT. ANN. § 21-5712, and those illegal actions caused his death. *See Fernandez*, 883 F.3d at 1298.

The complaint sufficiently alleges the elements of the illegality defense and the district court properly predicted that the Kansas Supreme Court would apply it here.[8]

---

[8] We deny the motion to certify since we conclude the Kansas Supreme Court would recognize the illegality defense here.

## III.   Conclusion

For these reasons, we affirm the district court's judgment.